In the Matter of Tassos CHRONOPOU-LOS and Tassos Chronopoulos d/b/a T.C.I. Limited, and Georgine Chronopoulos, Debtors.

Tassos CHRONOPOULOS and Tassos Chronopoulos d/b/a T.C.I. Limited, and Georgine Chronopoulos, Plaintiffs,

v.

MARATHON OIL COMPANY, Chicago Title and Trust Co., as Trustee under Lane Trust No. 1011800, and Constantine Drugas, as Agent for Certain Unknown Owners, and First National Bank of Evergreen Park, Defendants.

Adv. No. 82 A 3424.

United States Bankruptcy Court, N.D. Illinois, E.D.

Jan. 17, 1984.

William L. Needler, William L. Needler & Associates, Chicago, Ill., for William L. Needler & Associates.

Sherwin J. Malkin, Chicago, Ill., for Marathon Oil Co.

Robert C. Samko, Samko & Berger, Chicago, Ill., for Chicago Title and Trust Co. and Constantine Drugas.

## OPINION AND ORDER

ROBERT D. MARTIN, Bankruptcy Judge.

This case is on remand from the district court for further proceedings consistent with its opinion of June 24, 1983. The remand was specifically for the purpose of having a court familiar with the claims made in this and similar bankruptcy cases review the manner in which the firm of William L. Needler & Associates, Ltd. conducted its representation of the plaintiff, T.C.I. Limited. The case was briefed by counsel and ably argued to this court by Sherman Malkin attorney for Marathon Oil Company, Robert Samko, attorney for Chicago Title and Trust Company and Constantine Drugas, and William L. Needler, attorney for William L. Needler & Associates on November 16, 1983. From an exhaustive review of all of the papers filed in this proceeding and relevant portions of the files in the plaintiffs' chapter 11 case it appears that the situation which gave rise to the claims made by plaintiffs and the nature of those claims, while not common to large numbers of bankruptcy cases, are by no means novel or unique. The facts simply stated are as follows:

In September, 1977, T.C.I. Limited ("T.C. I.") and Marathon Oil Company ("Marathon") entered a lease agreement for real property in Palos Heights, Illinois. T.C.I. renovated the building on the property into the "Chef's Garden Restaurant." In 1980, T.C.I. defaulted on several monthly rent payments, and Marathon terminated the lease. An action to dispossess T.C.I. was filed, and a court order authorized the sheriff to restore possession to Marathon. Before the sheriff could evict T.C.I., the proceedings were stayed by T.C.I.'s filing a chapter 11 bankruptcy petition on November 12, 1980.

In February, 1981, Marathon sought relief from the automatic stay and requested to be placed in possession of the premises. A hearing in September, 1981, resulted in an Agreed Order stipulated to by William Needler on behalf of T.C.I. providing: release of the stay for Marathon to enforce its security interests; abandonment of the bankruptcy trustee's right, title, and interest in the premises; and authorization for the trustee to turn over possession to Marathon. During this hearing and prior to entry of the Agreed Order, Marathon's attorney declared his lack of authority to speak about Marathon's intentions regarding the premises. The attorney specifically refrained from making any representations as to Marathon's future conduct in connection with the premises except a commitment to meet with Evergreen Bank and discuss the disposition of the property.

Shortly thereafter, the property was turned over to Marathon pursuant to the Agreed Order. In July, 1982, Chicago Title & Trust ("C.T. & T.") and Constantine Drugas ("Drugas") purchased the property for $150,000.00. T.C.I. now claims there were buyers ready to pay $400,000.00 for the property. However, in September, 1982, T.C.I. stipulated to entry of an Agreed Order allowing Marathon's bankruptcy claim for a $56,108.35 deficiency on the sale.

Shortly after agreeing to the order allowing Marathon's deficiency claim, T.C.I. filed an adversary proceeding seeking to be re-

lieved from its prior consent to Marathon's claim and requesting an accounting for personal property left on the premises. T.C.I. premised its right to relief on harm caused by Marathon's failure to sell the property "in good faith." C.T. & T. and Drugas were joined as necessary parties to prevent further transfer of the property. The defendants filed motions to dismiss and the first of its motions to assess costs pursuant to 28 U.S.C. § 1927 (1980), which are the subject of this decision. After a scheduled hearing the motions to dismiss were granted because the complaint failed to state a cause of action on which relief could be granted. T.C.I. promptly filed an amended complaint.

T.C.I.'s amended complaint differed from the original complaint only in that it added claims that the restaurant building constituted a trade fixture and that Drugas was not a bona fide purchaser for value. This complaint was again subjected to motions to dismiss.

During the hearing on the motions scheduled in January, 1983, Judge Hertz indicated the second complaint did not state a claim. However, representations of counsel during the hearing suggested some possibility of a fraud claim, and T.C.I.'s attorney agreed that fraud was the major contention he sought to address by his pleadings. The amended complaint was withdrawn and leave was granted to submit a second amended complaint if a cause of action could be stated. T.C.I.'s attorney was warned about the risk of being taxed with costs upon a subsequent dismissal.

T.C.I.'s second amended complaint pleaded the same facts as the previous complaints, adding only the claims that Marathon had converted the trade fixtures and that Marathon breached a contract alleged to have been made in connection with or arising from the first Agreed Order. No fraud claim was stated despite Judge Hertz's prior admonitions. Defendants again moved to dismiss.

At a February, 1983, dismissal hearing on the second amended complaint, the court found no claim stated. When asked about the fraud claim, T.C.I.'s attorney admitted: "I didn't attempt to allege fraud in this complaint." The motions to dismiss were granted, but the motions to assess costs under 28 U.S.C. § 1927 were denied. All parties appealed to the district court, T.C.I. appealing the portion of the judgment dismissing the complaint, and defendants appealing the portion denying costs.

T.C.I.'s appeal was dismissed voluntarily and, thereafter, in June, 1983, the district court by Judge Plunkett issued an opinion on the denial to assess costs. The court found the test for a 28 U.S.C. § 1927 claim was stated in *Overnite Transportation Co. v. Chicago Industrial Tire Co.*, 697 F.2d 789 (7th Cir.1983), and remanded the case for a determination of whether T.C.I.'s attorney multiplied the proceedings in a vexatious and unreasonable fashion.

28 U.S.C. § 1927 (1980) provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

As the district court opinion in this case stated: "[t]here is little doubt that the debtor's attorney multiplied the proceedings." The question then becomes whether the proceedings were multiplied in a vexatious and unreasonable fashion. The district court found vexatious to mean "lacking jurisdiction and intended to harass." The court applied the definition to the elements of a § 1927 claim in *Overnite Transportation Co.* and found the test to be "not malice but rather whether the attorney in the exercise of good judgment should have known that the charges in his pleadings were frivolous."[1]

---

1. Both before and after the most recent amendments to the Federal Rules of Civil Procedure, federal courts have been increasingly vigilant in their oversight of abuses in litigation

■ Should T.C.I.'s attorney, William Needler, in the exercise of good judgment, have known that the charges in his pleadings were frivolous? In his argument Mr. Needler stated that during his absence from the office the matter had been referred to a new associate, Jeffrey White, who responded to the urgings of the debtor's principal to stop or undo the sale by whatever means possible. The matter was viewed as urgent and the pressure from the client was no doubt intense. Situations of this sort arise frequently for debtor's counsel in chapter 11 proceedings. Desperate problems are said to call for desperate measures. However, the measures available to debtor's counsel are not unlimited. Where, as in this case, relief from stay has already been granted to a secured creditor by consent, the broad equitable powers of the court can be invoked to reinstitute the stay only on proper pleading of a sufficient change of circumstances. However, there are various remedies under statute which may be available to any debtor, in bankruptcy or otherwise, in the event that collateral or property subject to liens is sold for less than reasonably equivalent value. T.C.I. failed to either plead the necessary changed circumstances or utilize any of the other recognized courses. Responding to the perceived urgency of the situation, Mr. White filed a complaint which made only vague claims under general powers of equity. Rather than present a sound legal theory, the complaint recited remedies for which there was no precedent nor statutory authority. This initial attempt may well be deemed creative. Subsequent efforts to plead the case, however, lacked the element of real or imagined urgency which may have justified Mr. White's first effort.

The filing of the amended complaint, which once again demonstrated insufficient legal basis to escape what must have been an anticipated motion to dismiss, cannot be excused as a response to an emergency. Between the filing of the initial complaint and the filing of the amended complaint there passed some forty-eight days which, had counsel applied themselves, could have been spent in conceiving and scrutinizing potential claims to arrive at one which might be both imaginative and legally viable. What was actually pleaded, however, does not demonstrate imagination, but rather a lack of care, scrutiny and serious intention to put forth any bona fide claims. "Frivolous" has been defined in the Random House College Dictionary as "1. of little or no worth, or importance; not worthy of serious notice." It would be extremely hard to find a better word to describe the first amended complaint.

■ The criticism to which the first amended complaint is subject is increasingly trenchant with respect to subsequent pleadings and proceedings in this case. It is incumbent upon an attorney where no serious claim exists on behalf of his client to refrain from filing frivolous claims. Mr. Needler as principal attorney for the debtor and as employer and supervisor of Mr. White failed to exercise the restraint which that obligation imposes. It is specifically for situations such as this that § 1927 is provided.

Mr. Needler argues that allowing costs in this case would create disincentives for creative pleading. However, arguing the same claims after repeated rejections is not creative. It is harassing, frivolous and in bad faith.[2] Creativity does not demonstrate itself in slight variations on a theory previously and emphatically rejected.

Mr. Needler makes two further arguments. The first raises questions as to the constitutionality of § 1927. This argument arose only in the briefing subsequent to the district court's order. It does not therefore

---

in both the pleading and discovery phases of legal actions. *See e.g. United States of America v. Allen,* Case No. 80–C–133, —— F.Supp. —— (W.D.Wis. Opinion and Order, Nov. 28, 1983) (unreasonable and bad faith attempt to enforce subpoena which would have led to premature disclosure of scientific data justified

imposition of reasonable attorney's fees against the losing party in the amount of $84,645.)

**2.** *Weiss v. United States,* 227 F.2d 72 (2d Cir. 1955), *cert. denied, reh. denied* 350 U.S. 977, 76 S.Ct. 431, 100 L.Ed. 847 (1956).

appear to be timely and is of no apparent merit. The second argument claims that his law firm should be exonerated because Mr. White, who handled the case is no longer an associate with the firm. However, as has been previously noted, Mr. Needler is the authorized counsel of the debtor who was the plaintiff in the subject proceeding. Mr. Needler argued to this court that Mr. White was given the case because of Needler's own unavailability to perform the work. There was no suggestion that either the client or the firm intended to terminate Mr. Needler's supervision of the work for the client, and Mr. White was an associate conceded to have at all relevant times been in the employ and under the supervision of Mr. Needler's firm. This argument, in addition to evidencing a lack of grace and pride, is without merit.

28 U.S.C. § 1927 permits recovery of excess costs, expenses and attorney's fees reasonably incurred as a result of unreasonable and vexatious multiplication of proceedings. Allowing, as ancient common law presumably did, every dog one bite, it is possible to characterize the initial complaint in this matter as ingenious rather than unreasonable or vexatious. However, all subsequent pleadings and proceedings fall within the latter category and provide a basis for a judgment in favor of the petitioning defendants.

After a careful review of the record including the affidavits of counsel on file, it is determined that T.C.I.'s attorney violated § 1927 when he filed the amended complaint. Judgment for reasonable fees expended by counsel after the filing of the amended complaint is therefore available to opposing counsel under 28 U.S.C. § 1927. Although it is always a difficult task for bankruptcy judges to determine what fees are reasonable for the performance of specific legal tasks, it is a job that is regularly required of them. Certain standards for such determinations have been articulated [3] and provide the basis for the award to be made herein. Of particular concern in this case is the apparent duplication of efforts undertaken by counsel for the codefendants. Having considered that duplication with all other standards in reviewing the fees requested by counsel in this case, I have decided that judgment may be had by Marathon for fees and costs incurred after December 17, 1982 in the amount of $3,558.25, and by C.T. & T. and Durgas for fees and costs incurred after December 17, 1982 in the amount of $4,123.55, such fees to be included in a bill of costs to be submitted within thirty days.

Upon the foregoing, which constitutes my findings of facts and conclusions of law, it is hereby ORDERED

(1) that defendant Marathon Oil Company may bill as excess costs and attorney's fees the sum of $3,558.25, the same to be assessed personally against William L. Needler and Associates Ltd.;

(2) that defendants, Chicago Title and Trust Company and Constantine Drugas may bill as excess costs and attorney's fees the sum of $4,123.55, the same to be assessed personally against William L. Needler and Associates, Ltd.

(3) that such excess costs and attorney's fees are in addition to such other costs as may properly be billed and assessed against the plaintiff debtor herein, T.C.I. Limited.

---

3. The standards to be applied in determining a reasonable attorney's fees are, *inter alia:*
1. The time and labor required,
2. The novelty and difficulty of the question,
3. The skill required to perform the legal services properly,
4. The preclusion of other employment by the acceptance of the instant case,
5. The customary fee,
6. Whether the fee is fixed or contingent,
7. Time limitations,
8. The amount involved and the results obtained,
9. The experience, reputation and ability of the attorney,
10. The undesirability of the case,
11. The nature and length of the professional relationship with the client, and
12. Awards in similar cases.
*In Re U.S. Golf Corp.,* 639 F.2d 1197 (5th Cir. 1981) (bankruptcy), *Souza v. Southworth,* 564 F.2d 609 (1st Cir.1977); *cf. Schmidt v. Schubert,* 433 F.Supp. 1115 (E.D.Wis.1977) (42 U.S.C. § 1988). To the extent relevant to present purposes, each of these factors has been considered.

(4) that defendants Marathon Oil Company, Chicago Title and Trust Co., and Constantine Drugas shall submit their bills of costs within 30 days after the date of this order.