EASTERBROOK, Circuit Judge.
Lawyers sometimes file first and think later. This may impose on the other party the costs of deciphering the pleading, running down the cases, informing the court, and putting things right. One of the premises of the legal system, however, is that each party should bear its own expenses and not fob them off on the otherside.
A court may order an attorney who “multiplies the proceedings ... unreasonably and vexatiously” to bear the adversary’s costs and attorneys’ fees personally, 28 U.S.C. §' 1927. William L. Needier & Associates, Ltd., filed unjustified pleadings in this bankruptcy suit. When its adversaries demonstrated that the pleadings were without substance, Needler’s firm revised them slightly and filed them twice more. The district judge awarded costs and fees for the second and third filings.
I
TCI Ltd. ran a restaurant in a building it had leased from Marathon Oil Co. TCI borrowed money from a bank to refurbish the building, and the loan was secured by the lease and the fixtures and furnishings of the restaurant. Tassos and Georgene Chronopoulos guaranteed the loan. TCI fell behind in its rental, and Marathon obtained an order of eviction from a state court. Before the sheriff could put TCI out on the street, however, it filed a petition in bankruptcy, which automatically *443 stayed the eviction and froze the relations among the parties.
Marathon and the bank sought relief from the automatic stay, and in September 1981 (more than a year after TCI stopped paying rent) bankruptcy judge Frederick J. Hertz signed a stipulation of TCI’s trustee releasing Marathon and the bank from the stay. The order recites that “there is no valid stay” concerning “the security interests of” Marathon and the bank “as to their respective interests in the debtor’s property.” It also provides that the trustee “is authorized and directed to abandon any right, title, and interest in and to” the “real estate” that Marathon owned. The bank agreed, in turn, not to pursue the guarantees for 90 days. At one point Judge Hertz orally asked Marathon to sell the property within that 90 days. Counsel for Marathon declined, stating that Marathon had not decided what to do with the property. When a lawyer mentioned “best efforts” to sell, Marathon’s attorney said: “I can’t speak for what Marathon Oil wants to do with the property. I don’t have the authority.” The judge responded: “All right. Leave that off of it.” The order entered in the case imposes no obligation on Marathon to sell the property or to exercise any care concerning it. The effect of the order is to terminate TCI’s lease, leaving Marathon and the bank to work out any rights the bank may retain.
In July 1982 Marathon sold the land and building to Constantine Drugas for $150,-000. (Chicago Title and Trust holds this property as trustee. We refer to Drugas as the sole owner to avoid multiplication of titles.) The sale apparently was subject to whatever rights the bank retained. Marathon kept the money. In September 1982 TCI stipulated that Marathon had a claim of $56,108.85 against TCI. Most of this apparently represents back rent.
Three weeks later Jeffrey P. White of William L. Needier & Associates, Ltd., the same attorney who had consented to Marathon’s claim for $56,108, filed an adversary proceeding on behalf of TCI and the Chronopouloses against Marathon, Drugas, and the bank. The complaint alleges that Marathon and the bank “were to act in good faith and use their best efforts to get a satisfactory disposition of the property” yet had not done so. The complaint objected to their “failure ... to follow the order of this court by failing to sell the property in good faith and to give notice to all interested parties ... and also giving an opportunity to said parties to purchase.” White also asserted in a second count that the fixtures of the restaurant were still the property of TCI. The complaint requested damages together with an order annulling the sale, extinguishing the bank’s claims against the Chronopouloses on the guarantees, and requiring Marathon to account for its profits.
Marathon and Drugas filed motions to dismiss and motions for costs under 28 U.S.C. § 1927. They observed that the order of September 1981 was unconditional and that Marathon, as the owner of the building and real éstate, was free to do with the property what it pleased. After several continuances, Judge Hertz heard the motions. Marathon and Drugas orally represented that they had been trying without success to get TCI to take the restaurant’s fixtures and any other property off their hands. The judge orally dismissed the complaint for failure to state a claim.
Thirteen days later White filed an amended complaint. The amended complaint repeated all of the contentions of the first and added the assertion that the order of September 1981 had not abandoned TCI’s interest in the building. First, White argued, the order applied only to “real estate.” The building was not “real estate,” White pleaded, because TCI had made improvements to it. Therefore “the restaurant building constitutes trade fixtures and as such is personal property.” Second, White maintained that the stay had been lifted only with respect to premises in which Marathon and the bank had a security interest, and they had none in the building itself. (The complaint does not spell this out, but the theory must have been that Marathon, as the owner of the build *444 ing, could not also have a security interest in it, and the bank’s security interest was in TCI’s lease and fixtures rather than the building.) The amended complaint also averred that the “sale was done for an inadequate price without notice and not done in a commercially reasonable manner” and that Drugas was not a bona fide purchaser for value.
New motions to dismiss followed, as did a new hearing. When it became clear that the bankruptcy judge thought the amended complaint no better than the first, White voluntarily dismissed it. Judge Hertz asked whether there was any allegation of fraud in obtaining the order of September 1981 and volunteered the advice that fraud would be about the only thing entitling TCI and the Chronopouloses to relief. White asked for leave to file still another amendment, which Judge Hertz granted with the ominous note that “there are certain risks you are going to run.”
The second amended complaint was not long in coming. This document contained five counts instead of the two in the earlier pleadings. But nothing of substance changed. Every assertion in this complaint had been in an earlier one. It did not mention fraud. Still another hearing on the complaint, and still another dismissal was its fate. Judge Hertz denied the requests under § 1927, however, because White had not been “malicious.” White filed an appeal to the district court; Marathon and Drugas filed cross-appeals. White later dismissed his appeal, bringing to an end the effort to upset the sale. The district court held that “malice” is not necessary to obtain fees under § 1927 and stated: “[Tjhis matter is remanded to Judge Hertz for a determination” whether White’s conduct unreasonably and vexatiously multiplied the proceedings.
Judge Hertz transferred the case to Judge Robert D. Martin, who usually sits in Madison, Wisconsin, but who had volunteered to help clear up a backlog in the bankruptcy court in Chicago. William L. Needier, now handling things himself, asked Judge Hertz to take the case back; he declined. Judge Martin held a new hearing, at which Needier explained that his firm had filed the complaints at the insistence of the Chronopouloses, who feared liability on their guarantees to the bank. Judge Martin found that White had “responded to the urgings of the debtor’s principal to stop or undo the sale by whatever means possible. The matter was viewed as urgent and the pressure from the client was no doubt intense.” 36 B.R. 364, 367 (Bankr.N.D.111.1984).
Judge Martin concluded that the conduct of the Needier firm had been unreasonable. “Desperate problems are said to call for desperate measures. However, the measures available to counsel are not unlimited.” Ibid. Once the automatic stay has been lifted, only proof of fraud or changed circumstances will allow alteration. The three complaints filed here did not allege either. “Mr. White filed a complaint which made only vague claims under general powers of equity. Rather than present a sound legal theory, the complaint recited remedies for which there was no precedent nor statutory authority.” Ibid. Judge Martin conceded that counsel must have room for creative endeavors, but here “[w]hat was actually pleaded ... does not demonstrate imagination, but rather a lack of care, scrutiny and serious intention to put forth any bona fide claims.” Ibid.
Judge Martin concluded that White had framed and prosecuted the complaint without any effort to ascertain whether it had a basis in law. He did not grant the request for fees in full, however, but awarded only the expenses Marathon and Drugas incurred in defending against the amendments. “The initial attempt may well be deemed creative. Subsequent efforts to plead the ease, however, lacked the real or imagined urgency which may have justified Mr. White’s first effort____ [AJrguing the same claims after repeated rejections is not creative. It is harassing, frivolous and in bad faith. Creativity does not demonstrate itself in slight variations on a theory previously and emphatically rejected.” Ibid. *445 The bankruptcy judge awarded fees aggregating some $8,000. 36 B.R. at 368.
The district judge offered the Needier firm an opportunity to supplement the record with any memoranda or letters to the client that might demonstrate the existence of legal research or any basis of the amendments. See Knorr Brake Corp. v. Harbil, Inc., 738 F.2d 223, 227 (7th Cir.1984). The firm submitted none, and the district court affirmed. All three parties appeal. The Needier firm contends that it should pay nothing; Marathon and Dragas seek fees for resisting the first complaint.
II
The American Rule is that each party bears his own legal fees unless the other side acts in bad faith. Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). There are exceptions for cases that generate common funds or in which statutes permit awards of fees. Section 1927 is not such a statute. It allows an award of fees only when an attorney “multiplies the proceedings ... unreasonably and vexatiously.” This is another way to state the traditional approach. The statute simply permits a court to transfer any award- of fees from a client to the offending lawyer.
“Bad faith” sounds like a subjective inquiry, and this is probably why Judge Hertz looked for evidence of “malice” on White’s part. Despite its sound, however, “bad faith” has an objective meaning as well as a subjective one. See Knorr, supra, 738 F.2d at 226-27 (summarizing and reconciling this circuit’s eases on § 1927). A lawyer has a duty, which the recent amendment to Rule 11 emphasizes, to limit litigation to contentions “well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.” Fed.R.Civ.P. 11. If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar, see Sunstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1040 (7th Cir.), cert. denied, 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977). See also Optyl Eyewear Fashion International Corp. v. Style Cos., 760 F.2d 1045, 1048 (9th Cir.1985) (§ 1927 allows a remedy in the event of bad “intent, recklessness, or bad faith”). A lawyer’s reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.
Subjective bad faith or malice is important only when the suit is objectively colorable. A lawyer who pursues a plausible claim because of the costs the suit will impose on the other side, instead of the potential recovery on the claim, is engaged in abuse of process. This is independently tortious, and it may be the basis of substantive liability under tort (or antitrust) laws as well as the basis for an award of fees. Grip-Pak, Inc. v. Illinois Tool Works, Inc., 694 F.2d 466 (7th Cir.1882), cert. denied, 461 U.S. 958, 103 S.Ct. 2430, 77 L.Ed.2d 1317 (1983). Even those who prevail may be liable for fees if in bad faith they cause their adversaries to bear excessive costs. Lipsig v. National Student Marketing Corp., 663 F.2d 178, 182 (D.C.Cir.1980); Wright v. Jackson, 522 F.2d 955, 958 (4th Cir.1975). This theme also appears in cases emphasizing that dogged pursuit of a colorable claim becomes actionable bad faith once the attorney learns (or should have learned) that the claim is bound to fail. E.g., Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 422, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978) (fees may be assessed against a plaintiff under 42 U.S.C. § 1988 if the “claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so”); Wang v. Gordon, 715 F.2d 1187 (7th Cir.1983).
*446 The principle underlying § 1927, Rule 11, and the bad faith exception to the American Rule is that in a system requiring each party to bear its own fees and costs, courts will ensure that each party really does bear the costs and does not foist expenses off on its adversaries. One cost of a lawsuit is research. An attorney must ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief. This may be a costly endeavor. Defense against a colorable claim also may be very costly. It would warp the system if a lawyer for a would-be claimant could simply file a complaint and require the adversary to do both the basic research to identify the claim and then the further work needed to craft a response. Suits are easy to file and hard to defend. Litigation gives lawyers opportunities to impose on their adversaries costs much greater than they impose on their own clients. The greater the disparity, the more litigation becomes a predatory instrument rather than a method of resolving honest disputes.
The recognition that lawyers’ acts may impose high costs on third parties has led many courts to adopt rules that bring costs home to those who create them. E.g., Eash v. Riggins Trucking Inc., 757 F.2d 557 (3d Cir.1985) (en banc) (courts may require counsel to pay the costs of empanelling a jury, when counsel incurred the cost needlessly); Analytica, Inc. v. NPD Research, Inc., 708 F.2d 1263 (7th Cir.1983) (costs created by stout resistance to a justified motion to disqualify counsel). The best way to control unjustified tactics in litigation is to ensure that those who create costs also bear them. See R. Rodes, K. Ripple & C. Mooney, Sanctions Imposable for Violations of the Federal Rules of Civil Procedure 86 (1981) (this study supplied much of the foundation for the 1983 amendment to Rule 11).
When an attorney recklessly creates needless costs the other side is entitled to relief. Rule 11 was amended in 1983 to make it easier for a court to award fees, indeed perhaps to make the award mandatory in some cases. Eastway Construction Corp. v. City of New York, 762 F.2d 243, 253-54 & n. 7 (2d Cir.1985). We have warned the bar of the risks; see Analytica, supra, and Knorr, supra, 738 F.2d at 230-31 (Pell, J., concurring). Lawyers who litigate carelessly now must take the consequences.
The first argument of the Needier firm before Judge Martin was that White filed the complaint at the insistence of the Chronopouloses. The implicit assertion is that the firm wanted to keep the business and had to do the clients’ bidding, or they would turn to other lawyers and the Needier firm would have lost income. This is not a reason to impose expenses on one’s adversary, however. Section 1927 was initially meant to deal with the perverse incentives of the United States Attorneys, who were paid by the pleading. See Roadway Express, Inc. v. Piper, 447 U.S. 752, 759-61, 100 S.Ct. 2455, 2460-61, 65 L.Ed.2d 488 (1980) (collecting the sparse legislative history). This incentive led the lawyers to file unnecessary documents — to “multiply” the proceedings in the terms of the statute — in order to serve their own interests. Similarly, the desire to keep business is an inevitable part of the practice of law. When lawyers yield to the temptation to file baseless pleadings to appease clients, however, they must understand that their adversary’s fees become a cost of their business. See Steinle v. Warren, 765 F.2d 95, 102 (7th Cir.1985) (imposing $2,500 damages for yielding to client’s demand); Blair v. Shenandoah Women’s Center, Inc., 757 F.2d 1435 (4th Cir.1985).
Needler’s second argument is that White did nothing out of the ordinary. Much bankruptcy practice in Chicago is a high-volume, low-margin practice. Lawyers with such a practice must do the best they can, and if this means filing pleadings in advance of doing legal research, it is an incident of the press of business. We agree with the implicit position that not all pleadings must (or should) be handcrafted. Short deadlines may lead to filings that are not fully formed. It is also folly to spend *447 $2,000 worth of time researching and writing the complaint in a $2,000 ease. One of the innovations in legal practice is the “legal clinic,” which specializes in routine cases that lawyers can handle at low fees precisely because they need not research every case from scratch. A bankruptcy practice — like many other specialized practices may be handled in large part with complaints and arguments pulled off the rack of documents suited to the task. The lawyer may rely on memory or seasoned intuition in place of fresh research.
The premise of routinized legal service, however, is precisely the routine nature of the claims. A lawyer may handle a large number of cases quickly by applying standard legal principles to each one. This does not support a complaint that proffers a new theory — not only in the sense that there is no precedent but also in the sense that it cuts against much precedent. Such a complaint is not a routine part of a busy practice. Rule 11 now requires a lawyer to undertake research before filing such a complaint. The rule was not in effect when Needier’s firm filed the complaints, and its requirement of prior research is novel, but the principle that the suit must have an objective foundation is familiar. An attorney who wants to strike off on a new path in the law must make an effort to determine the nature of the principles he is applying (or challenging); he may not impose the expense of doing this on his adversaries — who are likely to be just as busy and will not be amused by a claim that the rigors of daily practice excuse legal research. See Optyl, supra, and Eastway, supra.
Needier contends that the application of § 1927 to a case such as this will stultify creativity and dampen the zeal an attorney owes his client. As we emphasized in Knorr, courts must be careful not to undercut the orderly development of the law and ethical representation. But the “bad faith” standard serves this function. Congress believed when it added fees to the list of sanctions under § 1927 that the enforcement of the traditional bad faith standard would prevent making counsel timorous. See H.R.Conf.Rep. 96-1234, 96th Cong., 2d Sess. 8 (1980). The amended Rule 11 sets out a standard that we think applies equally to § 1927: a complaint must be “warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law.” If a competent attorney would find no basis for a legal argument, then it does not interfere with zealous advocacy to penalize the repetitious assertion of that argument.
White’s complaint does not set out a basis of relief recognized in existing law. It raises neither fraud nor any change of circumstances. The complaint relies on a supposed promise (a good faith sale by Marathon with notice to TCI) that is neither required by law (Marathon can do what it wants with its property after the end of TCI’s lease) nor established by judicial order (Marathon having objected to any clause limiting its rights). The complaint sought recovery for fixtures that may not have been TCI’s property, because fixtures usually revert to the owner of the building on the expiration of a lease, see In re Chicago, Rock Island & Pacific R.R., 753 F.2d 56 (7th Cir.1985). Then even after White had been told at the hearing that TCI was welcome to cart the fixtures and other property away, he repeated this claim in amended complaints. The amended and second amended complaints assert that the building itself is personal property, an argument whose only footing is George Orwell’s Newspeak. The claim with the best pedigree was the request for equitable relief against the bank’s enforcement of the Chronopoulos’ guarantees, on the theory that the bank had failed to realize on its security in a commercially reasonable way. But this relief should have been sought in the Chronopoulos’ bankruptcy proceeding, not in TCI’s, and it had nothing to do with Marathon or Drugas.
The legal work that we review cannot be characterized as a good faith application of the law or even a good faith request for a change in the law. The bankruptcy court is at all events not authorized *448 to change the law of fixtures or real property in Illinois. It must apply that law and determine the relative entitlements of creditors under it. Butner v. United, States, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). We are therefore not worried about “chilling” the sort of “creativity” demonstrated by these pleadings. Chilling this sort of “creativity” is the central function of § 1927.
Ill
The bankruptcy court required the Needier firm to pay only the costs Marathon and Drugas incurred in defending against the amended complaints. The district court declined to award fees for the expenses they incurred on the appeal from the bankruptcy court. Marathon and Drugas argue that they are entitled to their fees for the entire case.
Judge Martin had the authority to award the fees incurred right from the beginning. Congress rejected the theory that the common law litigant gets one free pleading. The conferees on the bill that amended § 1927 considered imposing a requirement that the judge warn counsel and impose fees only for subsequent conduct. “However, the managers decided not to require a warning as a matter of law because a violation might not necessarily be committed in the presence of the judge and because such a requirement might be viewed as license to engage in dilatory conduct until such a warning is given.” H.R.Conf.Rep. 96-1234, supra, at 8. See also Cote v. James River Corp., 761 F.2d 60 (1st Cir.1985). The new Rule 11 also requires the attorney to take care before filing a complaint, not just in revising what he has filed.
We review decisions under § 1927, as under other statutes permitting the award of fees, only for abuse of discretion. Optyl, supra, 760 F.2d at 1045; Lipsig, supra. Whether we would have awarded fees from the time of the first complaint is not the question; it is, rather, whether Judge Martin abused his discretion in not doing so. The judge came close to the line of abuse. The first complaint was as baseless as the amendments, and the principal costs and fees were incurred in defending against White’s first try. Drugas had not previously been involved in TCI’s bankruptcy and therefore had to review the record of the case to ascertain whether the complaint was colorable. Marathon’s lawyer had been in court in September 1981 and therefore had an easier time. Still, counsel had to review the record and the cases — to do the basic work that White failed to do. After producing the legal and factual arguments that led to the dismissal of the first complaint, counsel needed to do little more to dispose of the amendments. Given the language in the Conference Committee’s report, and the holdings of cases such as Cote and Eastway finding abuse of discretion in the denial of fees for transgressions less serious than this, we have been sorely tempted to reverse.
But the bankruptcy judge did not stop with the one-free-bite theory. He expressed “particular concern” about the “apparent duplication of efforts undertaken by counsel for the codefendants.” 36 B.R. at 368. Our review of the time records leads us to concur. Counsel spent a lot of time reviewing documents with which they should have been familiar. There was also no need for Drugas’s lawyer to explore the case in the depth he apparently did.
Some frivolous cases impose large costs on defendants when they require counsel to wade through voluminous records or review many cases. The pertinent record in this case, however, was eight pages of transcript and a page worth of judicial order. A complaint alleging that realty is personalty does not tax the resources of a large law library.- More, for all we know Drugas had a warranty deed from Marathon or some other method of indemnification. In this court Marathon and Drugas filed a joint brief. They should have cooperated sooner and better than they did. When a case is preposterous, and this is, the defendants need not incur substantial costs. There was no danger that Judge Hertz would grant any relief, and therefore no reason to spend the 206 hours for which *449 the lawyers sought compensation (125.7 for Drugas’s attorney at $100 per hour, 80.2 for Marathon’s at $75 per hour). The total request — more than five weeks of full-time work and $17,000 in fees — was absurd. The request of even $8,000 for time responding to the amendments also seems excessive.
The bankruptcy judge therefore did not abuse his discretion in deciding as he did. The district judge did not explain why he did not award fees for the work before him, but he probably had the same considerations in mind. An award of $8,000 gives counsel for the defendants full compensation for the time defending against the amendments, and by our lights this is an appropriate award for the entire proceeding in the bankruptcy and district courts.
IV
We have not yet discussed the Needier firm’s principal arguments on appeal. There are eight numbered headings in the firm’s brief. Part I is an introduction, Part II an objection to some statements in the district court’s three-page opinion. Part III asserts that Judge Martin’s own order “demonstrates” that the complaints did not multiply the proceedings. One argument on this point, without citation of authority, is that if the $150,000 price was reasonable then TCI should be excused from paying the $56,000 in accrued rent and costs. This has nothing to do with attorneys’ fees. Another argument under this heading maintains that if the restaurant building is personalty it was not released from the automatic stay by the order of September 1981 — perhaps true, but irrelevant. The brief does not argue that the restaurant is personalty, and for good reason.
Part IV of the brief contends that the ease should not have been assigned to Judge Martin. The Needier firm maintains that only Judge Hertz knew enough about TCI’s bankruptcy to evaluate the defendants’ request for fees. Judge Hertz may have had a better perspective on the facts initially, but this does not mean that he was required to hear the case. Certainly it does not justify Needler’s ad hominem argument that because Judge Martin is from Madison he cannot appreciate the state of bankruptcy practice in Chicago and should not be allowed to decide a case such as this. We often remand for proceedings before a different judge when the first is busy or unavailable — sometimes in criminal cases, where the second judge must impose a sentence even though the first heard the evidence.
Part IV contains the first citation. It is to Lipsig, which the brief says “stands for the proposition that an attorney is entitled to have a Section 1927 motion heard before the judge who heard the case.” Needier Br. 32. Lipsig has nothing to do with this proposition. It affirms an award of fees under § 1927 and says not a word about who is required to hear the request for fees.
Part V of the brief is the substantive legal discussion of the award of fees under § 1927. It is two pages long. Part VI contends that the defendants “did not plead for attorneys fees and are entitled to none” —a contention punctured by the motions themselves, which call for costs and attorneys’ fees. Part VII maintains that § 1927 “is clearly and patently unconstitutional.” It is “vague and standardless,” the brief maintains. The brief does not cite any decision of the Supreme Court. A few years ago that Court held in Piper that judges have the inherent authority to award fees personally against counsel, and the “bad faith” rule has been with us for almost 200 years. It does not seem likely to us that a Court willing to find adequate specificity in “conduct unbecoming an officer and a gentleman” (see Parker v. Levy, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)) would have much doubt about the application of § 1927 to conduct by a member of the bar. Finally, Part VIII asserts that the $8,000 award should be reduced.
We have laid out the contents of the brief in order to make clear that despite the award of fees in the bankruptcy court this *450 continues to be vexatious litigation. The brief is characterized by unwillingness to address serious arguments — even to acknowledge that the court has authority to shift the legal costs. It is marked by obdurate refusal to accept that White may have done anything wrong. Indeed, the Needier firm promises that it will continue to litigate in the same way. “The senior member of this firm would not have changed anything Mr. White did by an iota. It was a brilliant performance, in the fact [sic] of considerable odds, of which Mr. White justly can be proud.” And in the reply brief: “We are proud of Mr. White____ [A] debt- or’s attorney is not at liberty to accept or reject a particular type or character of case, such as is the general practice. The debtor's attorney must accept the debtor as he is and must prosecute or defend whatever litigation is dictated by the debtor’s circumstances, which is invariably necessary and urgent.” Not what is permitted or justified by law, but what is “dictated by the debtor’s circumstances.”
Unless attorneys learn from experience, § 1927 will not achieve its purpose. The bar of this circuit must be aware that the courts will enforce § 1927 and Rule 11. Litigation must be grounded in an objectively reasonable view of the facts and the law. If it is not, the lawyer who proceeds recklessly — not his innocent adversaries— must foot the bill.
Marathon and Drugas are entitled to their costs and attorneys’ fees in this court. The appeal also has postponed collection of the $8,000 award. Investments earned 10% or more annually during the interim. We therefore use our power under Fed.R. App.P. 38 and award the defendants $1,000 damages for delay, which they shall divide in the same ratio as the fees they received in the bankruptcy court. They have 15 days to file with the clerk of this court a statement of the fees they incurred here. There will be no costs other than the fees and the $1,000 penalty.
AFFIRMED.