See also 763 F.Supp. 315.

Terrence DONOHOE, et al., Plaintiffs,

v.

CONSOLIDATED OPERATING & PRODUCTION CORPORATION, et al., Defendants.

No. 86 C 7543.

United States District Court, N.D. Illinois, E.D.

Nov. 5, 1991.

Herbert Beigel, Norman Rifkind, Beigel & Sandler, Ltd., Bruce, Rose, Chicago, Ill., for plaintiffs.

Douglas P. Roller, Susan Clancy Boles, Rooks, Pitts & Poust, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

The song is ended,[1]

---

1. For the benefit of those who are not of a certain age, the quotation is taken from *The Song Is Ended,* © Irving Berlin Music Corp. As for the particulars of just how *this* specific song ended, see this Court's April 10, 1990 "Opinion 1" (736 F.Supp. 845) and its March 28, 1991 "Opinion 2" (763 F.Supp. 315), which together disposed of the case on the merits. To avoid depressing both the reader and this Court, this opinion will eschew repetition of what has already been said in Opinions 1 and 2. Where either of those earlier efforts must be·referred

But the melody lingers on.[2]

It was a long—and unquestionably highly expensive—road that defendants had to travel before they were able to rid themselves of this litigation in this District Court via Opinions 1 and 2.[3] Because our jurisprudence continues to adhere to the "American Rule," under which the cost of litigation is one of the risks of life in the absence of a statutory provision or court rule or contractual provision for the shifting of fees, defendants' effort to make themselves whole (just as though the litigation had never taken place) has taken the form of a motion asking "that sanctions pursuant to Rule 11 should be imposed against plaintiffs and their counsel, Herbert Beigel and the law firm of Beigel and Sandler, and that sanctions pursuant to 28 U.S.C. 1927 should be imposed against Herbert Beigel, Bruce Rose and the law firm of Beigel and Sandler" (D.Mem. 15).

That motion has set the stage for a collateral dispute that has acquired a life of its own. What has ensued is a set of somewhat remarkable filings:

1. Defendants' 2–page Motion for Sanctions and 15–page supporting memorandum (cited "D.Mem.—"), with its 13 pages of attached exhibits, was the opening gun.

2. Plaintiffs, their lawyer Herbert Beigel ("Beigel") and his law firm of Beigel & Sandler ("B & S") (collectively "Respondents") tendered a comparably-sized (16–page) Memorandum of Law in Opposition to Defendants' Motion for Sanctions (cited "Resp. Mem.—").

3. Bruce Rose ("Rose"), however, presented a 63–page (!) responsive memorandum (cited "Rose Mem.—"), accompanied by 113 pages (!!) of what passes for an affidavit by Rose[4] and another 1½ inches (!!!) of attached exhibits.

4. Not to be wholly outdone, defendants came back with a 27–page Reply Brief in Support of Defendants' Motion for Sanctions (cited "D.R.Mem.—") and just under an inch of their own exhibits.

This Court has never been among those who decry the 1983 amendment to Rule 11 and the concomitant expansion of 28 U.S.C. § 1927 ("Section 1927") jurisprudence for assertedly having fostered an evil worse than the regrettable litigation phenomena that those provisions originally sought to curb. Instead this Court views Rule 11

---

to here, the Opinion involved will be cited, followed by a dash and then the F.Supp. page number (but not its volume number).

2. More accurately (and in keeping with some late twentieth century music), the currently lingering melody is most unmelodious—a continuation of the same grating disharmony that has marked this litigation from the very beginning (a sort of legal equivalent of John Cage's music).

3. From the papers on the current motion, this Court has learned that the road has branched off into a state court litigation, which was filed after this Court had dismissed the pendent state law grounds under authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 726–27, 86 S.Ct. 1130, 1139–40, 16 L.Ed.2d 218 (1966) (see Opinion 1–878). And plaintiffs have also appealed the summary judgments that this Court entered in defendants' favor as decreed in Opinions 1 and 2, so that the case remains pending before our Court of Appeals as well.

4. In fact that document includes an amalgam of Rose's arguments, conclusions (legal as well as factual), beliefs and narrative—none of which are properly included in an affidavit—intermixed with other matters of the type that *do*

belong in an affidavit: matters to which an individual could testify of his or her own knowledge without evidentiary objection if that individual were on the stand (cf., in another context with which Rose is most certainly familiar, Fed. R.Civ.P. ["Rule"] 56(e)). This Court has regularly disapproved of the kind of "affidavit" that has been tendered by Rose—a phenomenon frequently encountered in the New York practice, in which the label of "affidavit" appears to be attached to *anything* so long as it is concluded by a jurat (as hyperbolic as that statement may sound, it really is not, in light of some of the so-called affidavits that this Court has encountered when it was engaged in the practice of law and was involved in matters with New York lawyers, as well as during the time since then, when it has been on the bench and has received such filings by New York lawyers who have been of record in cases on its calendar). Having said that, however, this Court recognizes the concerns of anyone in Rose's position, fighting to avoid damage to his professional reputation as well as to his pocketbook. And it is certainly true in this case that although a good deal of what Rose tenders via the "affidavit" and other materials must be viewed as chaff, other portions are both properly submitted and informative on the present motion.

and Section 1927 as essential components of the justice system—they are valuable both for their significant prophylactic effect in preventing litigation abuses and for their utility in shifting litigation expenses caused by such abuses when fee-shifting is in fact an appropriate remedial sanction. But the current motion shows the Rule and the statute in pretty much their worst light, providing fuel for the critics who would eliminate (or at least impair) the salutary aspects of those provisions just because the provisions themselves may on occasion be subject to abuse.

In any event, this opinion will of course consider the potential application of both Rule 11 and Section 1927 in light of the established case law that has informed their application. Numerous issues are posed by the parties' submissions in that respect, most of which turn out not to require treatment because of the fundamental bases on which this opinion disposes of defendants' claims. And because various of the issues presented by the parties are independent of others, while a number of the other issues are interdependent, there is no wholly logical sequence for dealing with the various topics.

This opinion will therefore not attempt to produce an ordered rather than a purely episodic treatment of the various questions. As it turns out, the basic explanations that negate defendants' efforts to secure sanctions may be put with extreme simplicity and brevity—and where any question that has been argued by one or more of the parties is not dealt with here at all (as is often the case), that certainly does not reflect this Court's failure to have considered the matter.[5] Instead such silence is merely occasioned by the fact that a disposition on the fundamental grounds that *are* set out here obviates the need to resolve any undiscussed matters.

### Persons Potentially Liable

By its terms Section 1927 applies only to "[a]ny attorney or other person admitted to conduct cases in any court of the United States ...," so that the lawyer alone and not the client is potentially liable under the statute. Unlike Rule 11, the statute is expressly framed in fee-shifting terms: When applicable, it requires the offending lawyer "to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." And once our Court of Appeals had altered its own approach to eliminate what had previously been a requirement that "the attorney must intentionally file or prosecute a claim that lacks a plausible legal or factual basis" (*Knorr Brake Corp. v. Harbil, Inc.*, 738 F.2d 223, 227 (7th Cir.1984)) in favor of an *objective* standard of conduct (*In re TCI Ltd.*, 769 F.2d 441 (7th Cir. 1985)),[6] the two provisions—Section 1927

---

5. This Court has indeed gone through *all* of the materials and the arguments submitted by the parties (an extraordinarily laborious process in what has often been termed—with an intended and deserved pejorative connotation—satellite litigation). In fact, in a way the massive submissions by Rose have largely contributed to the brief compass of this opinion, because they have shown that the positions that he and Beigel (and thus B & S) took on plaintiffs' behalf—though ultimately unsuccessful—were neither objectively nor subjectively "frivolous" or "reckless" in the legal sense that triggers Rule 11 or Section 1927 liability.

6. This Court had originally called upon Section 1927 as the basis for fee-shifting against an offending lawyer in *Knorr Brake*, 556 F.Supp. 484, 487–88 (N.D.Ill.1983)—it had to do so because the lawyer's conduct in *Knorr* antedated the 1983 amendment to Rule 11. That case then came to our Court of Appeals one year (or perhaps one panel) too early, for the Section 1927 sanction was reversed—though the fee-shifting ordered by this Court was clearly correct under the change in direction that was announced by *TCI* a year later. Although the entire *TCI* discussion dealing with the subject is instructive (769 F.2d at 445–48), a shorter excerpt is typical (*id.* at 445 (citations omitted)):

> "Bad faith" sounds like a subjective inquiry, and this is probably why Judge Hertz looked for evidence of "malice" on White's part. Despite its sound, however, "bad faith" has an objective meaning as well as a subjective one. A lawyer has a duty, which the recent amendment to Rule 11 emphasizes, to limit litigation to contentions "well grounded in fact and ... warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law." If a lawyer pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively un-

and the post–1983 version of Rule 11—became essentially interchangeable in substantive terms.

■ Despite that identity of the operative standards of lawyer conduct, as a fee-shifting vehicle Section 1927 has some advantages to the aggrieved party:

1. Because it does not focus on a specific signed and filed document as the required proximate cause of the injured party's legal expense, but looks instead to any lawyer "who so multiplies the proceedings in any case unreasonably and vexatiously," Section 1927 does not limit the responsibility solely to the actual lawyer signatory of the offending document, as has been recognized and confirmed with respect to Rule 11 by *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989).

2. As an express fee-shifting provision, Section 1927 does not call for the same analysis of the "appropriate sanction" as does Rule 11—which mandates that its violator must receive *some* sanction, but need not necessarily be saddled with payment of the opponent's legal fees (*Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, — U.S. ——, 111 S.Ct. 922, 934, 112 L.Ed.2d 1140 (1991), quoting and reaffirming *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990)).

Hence there may be aspects of the current motion that defendants might prefer to have this Court look at from a Section 1927 perspective.

As for Rule 11, since the adoption of its well-known 1983 expansion—the revision that eliminated the "empty head, pure heart" defense in favor of an objective standard of lawyer conduct—the Rule has been perceived as offering its own attractions to the party who has been saddled with unnecessarily burdensome legal expense. Because the objective standard is expressly set out in the Rule, while a comparable scope for Section 1927 has depended on a not-always-consistent judicial gloss, most of the case law was developed under Rule 11. Another possible advantage (this one mistaken, however) was that for a time some courts refused to read Rule 11 literally in its identification of the lawyer signing the sanction-triggering pleading or other document as the *only* lawyer on whom sanctions could be imposed—but that misapprehension has been corrected by the literal reading of Rule 11 adopted by the Supreme Court in *Pavelic*.[7]

Neither Beigel nor Rose signed the ultimate version of the complaint here—the Fourth Amended Complaint. That document was signed by Dean Armstrong ("Armstrong"), who was then an associate lawyer with (but who has since departed from) B & S. Defendants urge that a lead counsel such as Beigel—who was the sen-

---

reasonable and vexatious. To put this a little differently, a lawyer engages in bad faith by acting recklessly or with indifference to the law, as well as by acting in the teeth of what he knows to be the law. Our court has long treated reckless and intentional conduct as similar. A lawyer's reckless indifference to the law may impose substantial costs on the adverse party. Section 1927 permits a court to insist that the attorney bear the costs of his own lack of care.

And signaling Section 1927's substantial equivalence to what Judge Posner later characterized in the Rule 11 context as "a new kind of lawyer malpractice" (*Hays v. Sony Corp. of America*, 847 F.2d 412, 418 (7th Cir.1988)), *TCI* went on to say after coupling Section 1927 with Rule 11 (769 F.2d at 446 (citations omitted)):

When an attorney recklessly creates needless costs the other side is entitled to relief. Rule 11 was amended in 1983 to make it easier for

a court to award fees, indeed perhaps to make the award mandatory in some cases. We have warned the bar of the risks. Lawyers who litigate carelessly now must take the consequences.

7. There has been no comparable definitive judicial construction of the Rule 11 provision as to the liability of a *party* (as contrasted with that of a lawyer) for sanctions. There is no question that the client need not have put his or her pen to paper to be sanctionable, for Rule 11 mandates imposition of an appropriate sanction "upon the person who signed [the Rule-violative document], *a represented party*, or both" (emphasis added). But nothing in the Rule speaks directly to the factors that inform which of the potentially sanctionable person or persons should be chosen from among those alternatives as the actual target of the sanctions. More on this subject later.

ior managerial attorney throughout the litigation—should not be insulated by the *Pavelic* decision. And defendants cite a single post-*Pavelic* case so holding: *In re Rainwater*, 124 Bankr. 133, 140–41 (M.D.Ga. 1991).

■ There is to be sure a good deal of force to the notion that Rule 11 as drafted, and as it was accurately read in *Pavelic*, permits (or may even encourage) the evasion of its purpose of fostering lawyer responsibility. It is a simple matter for a lawyer to engage in Rule-violative conduct, either intentionally or under the objective branch of Rule 11, and to escape liability because some junior lawyer or some other partner has subscribed to the pleading that embodies such conduct. To express that concern in terms of this case, Beigel could have sloughed off any potential Rule 11 exposure merely by delegating the preparation and signing of the Fourth Amended Complaint to Armstrong. But the short answer to defendants' invocation of that spectre is that Rule 11 does *not* enact a respondeat superior or agency regime.[8] Arguments of that nature should be addressed to the Rule's draftsmen[9] and not as an appeal to jurisprudential irresponsibility, asking judges to override crystal-clear language because of policy considerations. *Rainwater* is simply wrong.

■ Because defendants also seek to impose sanctions on the individual plaintiffs as well as on their lawyers under Rule 11, a few words should be said on that subject as well. During this past Term *Business Guides* announced that the same objective standard (and not a subjective bad faith requirement) applied to clients just as it did to lawyers. Dealing with documents that had actually been signed on behalf of the client by one of its nonlawyer personnel, the Court both (1) rejected the solely individualized responsibility for such signatures that *Pavelic* had announced as to the signing lawyer (111 S.Ct. at 931) and (2) also held that the client was obligated to "conduct a 'reasonable [prefiling] inquiry' or face sanctions" (*id.* at 932–33). What the *Business Guides* opinion was not called upon to discuss (because the question was not presented in that case) was whether the client might also be liable for the absence of a prefiling "reasonable inquiry" where any Rule–11–violative document was signed and filed not by the client but by the lawyer. Because that is how Rule 11 reads literally, and because all of the Supreme Court's teachings to date have uniformly been based upon literal readings of the Rule, this Court will treat that question as getting a "Yes" answer.[10]

\* \* \* \* \* \*

8. Indeed, *Pavelic* itself was a case in which a partnership had been sanctioned by the lower court for one partner's transgression, only to obtain a reversal of that sanction by the Supreme Court. That result (to say nothing of the discussion in *Pavelic*) certainly scotches any imposition of vicarious responsibility under Rule 11 itself. In response to an argument that agency principles should be imported into Rule 11, *Pavelic*, 110 S.Ct. at 459 said:
We are not dealing here, however, with common-law liability, but with a Rule that strikingly departs from normal common-law assumptions such as that of delegability.
And it seems a fair reading of *Pavelic's* emphasis on nondelegability (*id.* 110 S.Ct. at 459–60) that it would also foreclose a two-step analysis in which (1) direct Rule 11 liability could be imposed on the signing lawyer, then (2) the signing lawyer's employers (if he or she is a law firm associate) or partners (if he or she is a law firm partner) could then be subjected to the same liability on agency principles.

9. Rule 11 has recently been the subject of invited public comment, and the multistep amend-

ment process has begun for a number of proposed modifications.

10. *Business Guides,* 111 S.Ct. at 928 (quoting from *Pavelic*) begins its substantive discussion thus:
"We give the Federal Rules of Civil Procedure their plain meaning." As with a statute, our inquiry is complete if we find the text of the Rule to be clear and unambiguous.
In fact, the four dissenting Justices—in the course of disagreeing with the majority as to the potential sanctionability of a client for having *signed* the Rule–11–violative document— stressed this portion of the Advisory Committee's Notes on Rule 11 (111 S.Ct. at 937 (emphasis in Justice Kennedy's quotation from the Notes)):
If the duty imposed by the rule is violated, the court should have the discretion to impose sanctions on either the attorney, *the party the signing attorney represents,* or both, or on an unrepresented party who signed the pleading, and the new rule so provides.

■ What all the discussion in this section means in terms of potential responsibility is this:

1. Because Armstrong and not Rose or Beigel signed the Fourth Amended Complaint, *Pavelic* bars Rule 11 liability against any of the lawyers targeted here for that pleading and its aftermath (and indeed, because Armstrong was not served with notice of the motion for sanctions, the lawyers who *are* before this Court would seem invulnerable under Rule 11 even under the *Rainwater* approach with which this Court disagrees). Section 1927, however, remains a potential source of fee-shifting.

2. Because Beigel also did not sign any of the other potentially sanctionable documents, the same conclusions apply to him as to all other potential Rule 11 liability. As for Rose, who *did* sign a number of filed documents during the periods that B & S made him the lawyer responsible for handling the case, any Rule 11 liability would depend on a look at the situation when each of those documents was filed and the proximate consequences of their being Rule–11–violative.

3. None of the plaintiffs (all of them nonlawyers in the case) has any possible Section 1927 liability. As for Rule 11, if any violation is found it will become necessary to decide against whom sanctions should run—the lawyers alone, the clients alone or both lawyers *and* clients.

This opinion turns, then, to the various substantive grounds for Rule 11 and Section 1927 liability urged by defendants.

### *Fraud–Based Claims*

■ Seven of the nine counts in the Fourth Amended Complaint[11] sounded in fraud—at least in part:

1. Count 1 invoked Securities Exchange Act of 1934 ("1934 Act") § 10(b), 15 U.S.C. § 78j(b);

2. Count 2 alleged a violation of Securities Act of 1933 ("1933 Act") § 17(a), 15 U.S.C. § 77q(a);

3. Count 4 charged, in part, a conspiracy to violate 1933 Act § 12(2), 15 U.S.C. § 77*l* (2);

4. Count 5 asserted common law fraud;

5–6. Counts 7 and 8 claimed violations of RICO, 18 U.S.C. §§ 1962(a), (c) and (d); and

7. Count 9 claimed, in part, a violation of the Illinois Blue Sky Law, Ill.Rev.Stat. ch. 121½, ¶ 137.12 G.

This Court (in Opinion 1–864 to 876) dismissed all those fraud-based claims because plaintiffs had failed "to raise an issue of fact, even in inferential terms, as to whether defendants had the requisite mental state to be liable for fraud" (*id.* at 876). That doomed all of those claims except for the 1933 Act § 17(a) claim (which, as explained below, succumbed because that statute did not confer a private right of action).

In effect defendants now argue that their lawyers' initial offer to cooperate with plaintiffs' counsel in advancing fraud charges against persons other than the present defendants—on the theory that everyone on both sides of the present dispute had been victimized by the active developers of the oil wells—negates any objective good faith assertion by plaintiffs of any fraud-based claim against the present defendants. That sort of "trust us" contention, when it was voiced to investors who reasonably understood themselves to have been swindled by the present defendants as well as by the active developers, was (quite understandably) totally unpersuasive. Plaintiffs cannot be faulted for having refused to give defendants a pass based on the latter's self-serving denial of any fault on their part.

Quite apart from that, although this Court did ultimately rule in defendants' favor on the fraud claims, its decision came at the end of an extensive discovery pro-

---

**11.** That pleading captioned the claims by spelling out the numerical designation of the several counts: "Count One" and so on. Purely as a matter of more familiar usage, this opinion will use Arabic numerals instead.

cess.[12] As already stated, this Court has reviewed the detailed presentation and the responses to defendants' current motion (principally Rose's bulky offerings), and it does not find the predicate for Rule 11 or Section 1927 violations in any of the fraud claims that were advanced by plaintiffs or their counsel.

■ Only one of the fraud-type claims calls for further discussion because it presents a special problem: It was the 1933 Act § 17(a) claim, which was conceded outright in plaintiffs' response to defendants' summary judgment motion. Defendants contend that plaintiffs' lawyers, in originally advancing that claim, failed the legal (rather than the factual) insufficiency standard of Rule 11. And if Rule 11 liability is unavailable to deal with that claimed failure, defendants fall back on the argument that Section 1927 applies because plaintiffs' lawyers did not dismiss the claim immediately after our Court of Appeals handed down its decision in *Schlifke v. Seafirst Corp.*, 866 F.2d 935, 942–43 (7th Cir.1989).

But it would be intolerable to sanction a lawyer for having included a 1933 Act § 17(a) claim when, at the time this lawsuit was filed, our Court of Appeals had only recently left the viability of such private causes of action expressly unresolved in *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir. 1985). To be sure, at that time this Court and some other District Court judges had decided what *Angelos* labeled an "open question" by having rejected such causes of action, but others of this Court's colleagues had gone the other way. In that state of affairs, responsible counsel surely retained the right to urge such claims at least until a definitive ruling came down from the Seventh Circuit.[13]

■ As for defendants' alternative argument—that Beigel "certainly is subject to sanctions under 28 U.S.C. § 1927 for failing to dismiss that claim prior to defendants [sic] filing of their summary judgment motion" (D.R.Mem. 14)—the difficulty there is that defendants have not shown any effort to mitigate their own damages. If defense counsel had written or told plaintiffs' lawyers that *Schlifke* had definitively resolved the previously open issue of private causes of action under 1933 Act § 17(a), thus mandating withdrawal of the claim, that portion of defendants' work on the summary judgment motion could have been avoided. But in the absence of any such notification, certainly no sanctions should be imposed.[14]

Neither the fact-based nor the law-based grounds for sanctions was present as to plaintiffs' several fraud-based claims. Defendants' motion must be denied to that extent.

### Securities Registration Claims

■ Count 3 of the Fourth Amended Complaint charged defendants with the sale of unregistered securities in violation of 1933 Act § 5, 15 U.S.C. § 77e, while Count 9 advanced a comparable claim under the Illinois Blue Sky Law, Ill.Rev.Stat. ch. 121½ ¶ 137.12 B. Opinion 1–876 to 878 rejected those claims because this Court

---

**12.** Here is defendants' own description of the wide-ranging discovery conducted by the parties (D.Mem. 2 & n. 2):

> Discovery in this case spanned in excess of three years. Plaintiffs deposed Nortman, Berrettini, Jeffrey Arnold, Robert Stovall and defendants' two rebuttal experts Raymond Nicholas and Thomas Gerber. Defendants deposed plaintiffs Terrence Donohoe, John Elder, Clarence Sopko, Bernard Medville, Curtis Berguist, and John Hayes, as well as Edgar D'Abre and plaintiffs' experts John Cook and Gene Trimble. Extensive document discovery was undertaken by both sides and written discovery was likewise propounded.[2]

2 In lieu of deposing each of the fifty-four plaintiffs, defendants propounded detailed interrogatories to be answered by each plaintiff.

**13.** In fact, even after *Schlifke* a lawyer who was considering the prospect of taking the issue to the ultimate authority of the Supreme Court—or even the possibility of seeking reconsideration by our Court of Appeals—could well continue to make the same arguments so long as he or she made full disclosure of the actual state of the law.

**14.** Indeed, it was actually plaintiffs' counsel (in their response to defendants' summary judgment motion) and *not* defendants' counsel who first referred to the *Schlifke* decision.

found that the several COPCO oil development programs should not be integrated and treated as a single offering for purposes of those statutes.

Though this Court thus found the contentions offered up by plaintiffs' counsel ultimately unpersuasive, their arguments for integration cannot fairly be characterized as either frivolous or as coming close enough to that standard so as to support sanctions. It would chill the litigation process too much if lawyers were to be penalized for having asserted legal positions on behalf of their clients that clearly pass what one of this Court's former colleagues referred to as the "straight face" test.

### 1933 Act § 12(2)

Only one of plaintiffs' claims survived Opinion 1—their Count 4 claim charging that there had been misrepresentations in COPCO's private placement memoranda, in violation of 1933 Act § 12(2), 15 U.S.C. § 77l(2). It was nearly a year later that Opinion 2 granted summary judgment also dismissing that claim, this time on statute of limitations grounds.

■ Again plaintiffs' being on the short end of a legal argument does not of itself equate to their (or their lawyers') having to bear their opponents' legal expenses. No less than the ultimate authority has taught that Rule 11 does not enact an automatic fee-shifting regime (*Business Guides*, 111 S.Ct. at 934). And although Section 1927 (unlike Rule 11) mandates the imposition of fees as a sanction once a violation has been found, the criteria that it creates for finding a violation also negate any one-to-one correlation between a lawyer's losing a lawsuit and the lawyer's bearing personal liability for the opposing lawyer's fees.

■ In this instance what this Court found to be the critical piece of evidence that established the ticking of the 1933 Act § 12(2) one-year limitations clock based on discovery was the transcript of the July 24, 1985 investors' meeting (Opinion 2–315 to 316, and the full transcript of that meeting reproduced at *id.* 325–51). On that score Rose Mem. 37–51 deals at great length with setting out a perspective of the matter

that, although it too was ultimately unpersuasive to this Court on the merits, must be viewed as possessing some degree of speciousness—at least enough so as to avoid the imposition of sanctions. Once more the parties will be left to bear their own expenses under the American Rule.

### Conclusion

This prolonged litigation has spawned a correspondingly massive sanctions motion. But defendants have not matched their total victory on the substantive merits of the lawsuit with an equivalent right to be victorious on the issue of sanctions. This Court has been loath to expend even more judicial resources on a chapter-and-verse explanation—the targeted lawyers have done that in great detail in their responsive memoranda (Rose Mem. and Resp. Mem.) and supporting materials, and they are right. Defendants' motion is denied.