**CONTINENTAL INSURANCE COMPANY**

v.

**CONSTRUCTION INDUSTRIES SERVICES CORPORATION.**

**No. 90 CV 2383.**

United States District Court,
E.D. New York.

June 23, 1993.

Lester Schwab Katz & Dwyer (Steven B. Getzoff, of counsel), New York City, for plaintiff.

Kroll & Tract (Neil B. Connelly, of counsel), New York City, for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

Plaintiff Continental Insurance Corporation (Continental), a provider of general liability and automobile insurance, brought this action alleging that defendant Construction Industries Services Corporation, an insurance broker, converted certain insurance premium payments defendant had collected on behalf of Continental.

Subsequently Continental reported that it had misidentified its citizenship in its complaint and that the action should be dismissed for lack of diversity jurisdiction. The request was granted.

Defendant moves for sanctions under Rule 11 of the Federal Rules of Civil Procedure.

### I

This dispute arose in the following manner.

Continental filed a complaint invoking federal jurisdiction based upon diversity of citizenship. The complaint alleged that plaintiff is a New Hampshire corporation with its principal place of business in New Jersey, and that defendant is a New York corporation with its principal place of business here.

In reviewing papers prior to oral argument on the parties' summary judgment motions the court observed that plaintiff had indicated on an unexecuted "Program Administration Agreement" that its principal place of business is located in New York, not New Jersey. The court's further research revealed that plaintiff had represented to at least three other federal courts that its principal place of business was located in New York. *See, e.g., American Int'l Underwriters, Inc. v. Continental Ins. Co.*, 843 F.2d 1253, 1255 n. 1 (9th Cir.1988); *Maryland Casualty Co. v. Wausau Chemical Corp.*, 809 F.Supp. 680, 683 (W.D.Wis.1992); *Continental Ins. Cos. v. Wickes Cos., Inc.*, No. 90–CV–9215, 1991 WL 183771, at *4, 1991 U.S.Dist.LEXIS 12426, at *12 (S.D.N.Y. Sept. 5, 1991).

When Continental appeared for oral argument Steven B. Getzoff, its attorney-of-record, was manifestly surprised to learn of the apparent discrepancy between facts alleged in the complaint and facts stated in the judicial opinions. He advised the court that he would investigate whether this court properly could exercise jurisdiction over the dispute.

Mr. Getzoff reported, in a letter dated April 5, 1993, that plaintiff had asserted on several occasions, including in environmental litigation then pending in New Jersey, that its principal place of business is located in New York. He explained that neither he nor his client intended to mislead this court or defendant, and that "at worst, there was confusion amongst the appropriate representatives of Continental concerning the proper

designation" of the company's principal place of business at the relevant time.

Based upon his investigation, Mr. Getzoff requested leave of the court voluntarily to discontinue the action on the ground that the court lacked subject matter jurisdiction. The request was granted, and the action was dismissed without prejudice.

Defendant then asked the court to impose sanctions on either Mr. Getzoff, who signed the erroneous complaint, or Continental, which did not sign the complaint.

## II

■ The request that Mr. Getzoff be sanctioned does not require extended discussion.

In *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 550–51, 111 S.Ct. 922, 933, 112 L.Ed.2d 1140 (1991), the Supreme Court held that Rule 11 imposes an affirmative duty upon anyone who signs a pleading, motion, or other paper "to conduct a reasonable inquiry into the facts and law before filing, and that the applicable standard is one of reasonableness under the circumstances."

Mr. Getzoff has explained in a letter that, when signing the complaint, he relied upon a representation by the company's assistant general counsel that Continental's principal place of business was located in New Jersey. Mr. Getzoff further stated that he had no reason to believe that Continental had taken a contrary position before any other court during the relevant time.

Mr. Getzoff plainly did all that a reasonably competent attorney would be expected to do under the circumstances. He relied upon Continental's assistant general counsel, a member of the bar, to determine the corporation's principal place of business. This court would not expect him independently to examine that determination, absent some reason to question it. Perhaps Mr. Getzoff could have noticed and inquired why a proposed "Program Administration Agreement" (one of Continental's exhibits) stated that Continental's principal place of business was located in New York. But the defendant did not notice and inquire into this apparent discrepancy either.

After the court raised the issue of subject matter jurisdiction, Mr. Getzoff promptly and diligently requested and obtained an adjournment of the pending motions, investigated the matter, and reported his findings and conclusions to the court.

The court declines to impose sanctions on Mr. Getzoff.

## III

■ The request for sanctions against Continental requires more extended discussion because the Supreme Court and Second Circuit have recently introduced some uncertainty as to "whether and under what circumstances a nonsigning party may be sanctioned." *Business Guides, Inc.*, 498 U.S. at 554, 111 S.Ct. at 935 (declining to reach the issue). *See also United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1344 n. 3 (2d Cir.1991) (declining to decide whether, in light of *Business Guides*, a subjective or objective standard applies to represented parties who do not sign a pleading, motion, or other paper).

Moreover, neither the Supreme Court nor the Second Circuit has examined the standard to be applied where, as here, a represented party, through its in-house counsel, participates in the litigation and the attorney of record reasonably relies on the findings of fact and conclusions of law determined by the in-house counsel.

This court therefore examines the language, legislative history, and judicial construction of Rule 11 with some care.

### A

The text of Rule 11 is reproduced in substantial whole below with its subparts enumerated to clarify the following discussion.

[1] Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. [2] A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address.... [3] The signature of an attor-

ney or party constitutes a certificate by the signer [a] that the signer has read the pleading, motion, or other paper; [b] that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law, and [c] that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... [4] If a pleading, motion, or other paper is signed in violation of this rule, the court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

In substance, sentences [1] and [2] require an attorney of record or an unrepresented party to sign each pleading, motion, or other paper. Sentence [3] transforms that signature into a certification of three distinct facts: first, that the signer has read the paper; second, that to the best of the signer's knowledge based upon "reasonable inquiry" the paper is grounded in fact and warranted by law; and third, that the paper is not interposed for any "improper purpose." Sentence [4] compels the court to sanction "the person who signed" the paper, a "represented party," or both if the rule is violated.

The subparts of the rule do not make plain why and under what circumstances a nonsigning party may be sanctioned for violating the rule, given that sentences [1], [2], or [3] do not impose any obligation on a nonsigning party.

Nevertheless, sentence [4] plainly contemplates the imposition of sanctions on a represented party who does not sign a pleading, motion, or other paper. Otherwise, the reference in that sentence to "represented party" is superfluous, and the sentence would only refer to "the person who signed" a pleading, motion, or other paper. Just as plainly, sentence [4] contemplates sanction-

ing a represented party in some instances in which the signer is not sanctioned.

This reading of the text is unambiguously endorsed in the notes of Advisory Committee on Civil Rules, prepared when the rule was last amended in 1983. Those notes state that:

Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client. See *Browning Debenture Holders' Committee v. DASA Corp.,* [560 F.2d 1078 (2d Cir.1977) ]. This modification brings Rule 11 in line with practice under Rule 37, which allows sanctions for abuses during discovery to be imposed upon the party, the attorney, or both.

*Advisory Committee Note,* 97 F.R.D. 165, 200 (1983).

■ Not immediately evident from the text is the circumstance in which a nonsigning party may be sanctioned. One possibility is that the nonsigning party may only be sanctioned for the interposition of a pleading, motion, or other pleading for an "improper purpose" (that is, in violation of sentence [3c] ). The sole case cited in the Advisory Committee Note, *DASA Corp.,* is such a case. There, the court imposed sanctions on a represented party that had interposed frivolous and baseless motions in bad faith in order to delay the litigation and harass the opponent.

But this narrowing construction of sentence [4] effectively rewrites the rule while undermining the purpose of the 1983 amendment. If the Advisory Committee wished to propose, and the rule is intended to provide, such a result, the rule should state that a court shall sanction (i) the person who signed a paper for failing to conduct a "reasonable inquiry," and (ii) the person who signed a paper, a represented party, or both, for interposing a pleading, motion, or other paper for an "improper purpose." A single case cited by the Advisory Committee constitutes little reason to rewrite the rule.

Moreover, this limited reading of sentence [4] hardly advances the purpose of the 1983 amendment, which was to deter the filing of

papers unsupported by fact or law. The court can think of no reason why the rule would compel sanctions on a signer who failed to conduct a "reasonable inquiry," yet exempt from sanctions a represented party who participates in the preparation of a pleading, motion, or other paper and who either knew or could justly and reasonably be expected to know that the paper lacks a basis in fact or law.

 A more natural reading of sentence [4] is that a signer, represented party, or both, shall be sanctioned for a violation of any part of sentence [3] in order to deter frivolous and baseless proceedings. This court sees no deterrent purpose in requiring unsuspecting nonsigning parties with no familiarity with the Federal Rules of Civil Procedure to conduct a "reasonable inquiry" into facts and the law. But where a represented party (i) is a member of the bar (or is a corporation employing members of the bar) and (ii) actively investigates facts and reaches legal conclusions that are reasonably relied upon by the attorney who signs a pleading, motion, or other paper, the text of Rule 11 appears to impose an affirmative duty on the party to conduct a "reasonable inquiry."

This reading ensures that some attorney—whether the attorney of record or the represented party—conducts the required inquiry.

### B

The Second Circuit and Supreme Court cases that have addressed whether a non-signing party must conduct (or at least not undermine, preempt, or obstruct) a "reasonable inquiry" support this reading of the rule.

In *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1474 (2d Cir.1988), *rev'd on other grounds sub nom, Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), the Second Circuit held, in a case involving sanctions against an individual party with fragile "contacts with reality," that "when a party has participated in the filing of a paper signed by the attorney or has signed a paper himself but did not realize that such participation or signing was wrongful, then sanctions against the party are not appropri-

ate." The court observed that a represented party "should not be sanctioned for papers signed by the attorney unless the party had actual knowledge that filing the paper constituted wrongful conduct." *Id.* But a represented party may be sanctioned where the party misleads an attorney as to facts or the purpose of the lawsuit. *Id.* at 1475.

That court distinguished parties from attorneys, and justified imposing a higher duty on attorneys who, as licensed professionals and officers of the court, are expected to measure up to minimal standards of professional competence. *Id.* at 1474. *See also Greenberg v. Hilton Int'l Co.*, 870 F.2d 926, 934 (2d Cir.), *reh'g granted and remanded on other grounds*, 875 F.2d 39 (2d Cir.1989) (noting, in dicta, that "[w]here a party represented by an attorney is the target of a Rule 11 motion ... the subjective good faith test applies").

But while the Second Circuit expressed its rule as applying an objective standard on the attorney of record and a subjective standard on a represented party, the court's reasoning turned on the distinction between attorneys and others (not between the attorney of record and the represented party). Neither the *Calloway* nor *Greenberg* courts considered whether to impose sanctions on a corporation which, as here, participated in litigation through its in-house counsel to the extent that the represented party undermined or preempted a "reasonable inquiry" by the attorney of record.

Insofar as the *Calloway* court construed Rule 11 as requiring attorneys to measure up to a minimal standard of competence, it supports this court's reading of Rule 11 imposing an affirmative duty of reasonable inquiry on any represented party who is a member of the bar (or is a corporation employing members of the bar), and that participates in investigating facts and drawing legal conclusions.

The Supreme Court's decision in *Business Guides* provides further support for this view. The Court there held that a represented party who voluntarily co-signed a pleading, motion or other paper must conduct a "reasonable inquiry" into facts and law and that the standard of reasonableness un-

der the circumstances applied. But the Court did not consider "whether and under what circumstances a nonsigning party may be sanctioned" for failing to conduct a reasonable inquiry into facts and law. 498 U.S. at 554, 111 S.Ct. at 935.

That Court observed that in certain circumstances it would be reasonable and fair to sanction signing parties, noting that many corporate clients (like the represented party here) "have in-house counsel who are fully competent to make the necessary inquiry." 498 U.S. at 550, 111 S.Ct. at 933. Moreover, in a part of the dissent joined by Justice Marshall and Justice Stevens, Justice Kennedy observed that "Rule 11's requirement of reasonable inquiry can be justified as within the traditional power of the courts to set standards for the bar." 498 U.S. at 564, 111 S.Ct. at 940.

The *Business Guides* decision has introduced some uncertainty among lower courts. For example, in *Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 617 n. 4 (3d Cir.1991), a case involving the duty of reasonable inquiry, the Third Circuit seemingly concluded that a represented party may not be sanctioned under any circumstances in the absence of a signed paper.

The Second Circuit noted that *Business Guides* had overturned its rule with respect to parties who sign pleadings, motions, and other papers, but explicitly declined to decide whether a subjective or objective standard ought to apply to nonsigning parties. *See United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1344 n. 3 (2d Cir.1991). *See also Greenhouse v. United States*, 780 F.Supp. 136, 147 (S.D.N.Y.1991) (applying a "flexible standard" and declining to sanction an unsophisticated non-signing party who did not know nor could be expected to understand defects in the papers).

■ Consistent with the text of Rule 11 and its legislative history, this court holds that where the in-house counsel of a represented party participates in the litigation and the attorney of record reasonably relies on the findings of fact and conclusions of law made by the in-house counsel, Rule 11 imposes an affirmative duty upon the represented party, as principal for the in-house counsel,

to conduct a "reasonable inquiry" into the facts and the law. The applicable standard is one of reasonableness under the circumstances.

## C

■ Continental has offered no evidence that its assistant general counsel conducted a reasonable inquiry into the question of the company's principal place of business at the time the complaint was filed. The company has offered no explanation for why it took inconsistent positions with respect to its citizenship in simultaneous federal lawsuits, and has only said that "there was confusion amongst the appropriate representatives" at the company. Plainly the company is a sophisticated corporation that brings diversity cases with some frequency. Its assistant general counsel should have ensured that the company adopted consistent positions during a single time period. Because he failed to so, he failed to meet the minimum standard of professional competence required by Rule 11. Under the doctrine of respondeat superior, Continental must be held responsible for these acts.

## IV

In order to deter this type of careless or reckless error that wastes judicial resources and imposes unnecessary costs on all concerned, the court directs Continental to pay $3,000 to defendant within 30 days of the date of this order.

So ordered.