### In re Troy Lee KILGORE and Jeanne Ann Kilgore, Debtors.

#### No. 98–08227–W.

United States Bankruptcy Court,
D. South Carolina.

June 16, 2000.

---

### ORDER

JOHN E. WAITES, Bankruptcy Judge.

THIS MATTER comes before the Court upon Troy Lee Kilgore and Jeanne Ann Kilgore's (collectively "Debtors") Motion for Sanctions, Attorney's Fees, Damages, Punitive Damages and Other Relief (the "Motion") filed with the Court on February 9, 2000. The Motion seeks a monetary award against Aames Financial Corporation ("Aames"). On March 3, 2000, both D. Randolph Whitt ("Whitt") and Pearce W. Fleming ("Fleming")[1] filed objections to the requested relief on behalf of the creditor, Aames. The Motion failed to specify the legal grounds and, more specifically, the sections of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure under which Debtors were seeking damages. In order to provide the parties with specific notice and appropriate due process, the Court entered an Order to Show Cause requesting Fleming and Aames to appear at a hearing to show cause why Aames' providing of incorrect factual contentions and evidence in support of Fleming's Affidavit of Default and its failure to inform Fleming of the error in obtaining a relief from the automatic stay; as well as Fleming's filing of an Affidavit of Default on November 9, 1999, submitting an Order Granting Relief from Stay, and filing of a foreclosure suit against Debtors grounded on erroneous facts, did not constitute grounds for sanctioning. On May 26, 2000, Debtors filed a supplemental brief in support of their Motion and claimed that they were seeking damages pursuant to 11 U.S.C. § 326(h)[2] and Fed. R.Bankr.P. 9011. On the same date, Whitt and Fleming filed supplemental responses to the Motion including arguments associated with the application of 11 U.S.C. § 105. After considering the pleadings, the evidence presented, and the arguments of counsel at the hearing on the Motion and at the hearing on the Order to Show Cause;[3] the Court makes the following Findings of Fact and Conclusions of Law pursuant to Rule 52 of the Federal Rules of Civil Procedure, made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.[4]

### FINDINGS OF FACT

1. On or about August 11, 1998, Aames forwarded its file on Debtors' account to Fleming's law firm for the purpose of commencing a foreclosure action on Debtors' home, thus retaining Fleming to collect its outstanding balance from Debtors.

2. Debtors filed their petition for relief under Chapter 13 of the Bankruptcy Code on September 22, 1998, which was prior to the filing of the foreclosure suit. As a result of the filing of Debtors' Chapter 13

---

1. Whitt and Fleming are attorneys in different law firms. They are both experienced in foreclosures and bankruptcy collection actions and apparently have had ongoing attorney-client relationships with Aames. While at the hearing on the Motion Fleming formally appeared on behalf of Aames and not himself, at the hearing on the Order to Show Cause he appeared solely on his own behalf, and Aames was represented by Whitt.

2. Further references to the Bankruptcy Code shall be by section number only.

3. At the hearing on the Motion, the parties present included Debtors and their attorney, Whitt, and Fleming, while at the hearing on the Order to Show Cause only the three attorneys were present. No business representative of Aames appeared at either hearing to address the sequence of events or defend the accusations against it.

4. The Court notes that to the extent any of the following Findings of Fact constitute Conclusions of Law, they are adopted as such, and to the extent any Conclusions of Law constitute Findings of Fact, they are so adopted.

case and the effect of the automatic stay, the foreclosure action by Fleming on behalf of Aames was suspended.

3. On December 7, 1998, Aames' Bankruptcy Representative filed a Proof of Claim on behalf of the mortgage company which indicated that the amount of the claim totaled $92,874.88 and further reflected a pre-petition arrearage in the amount of $6,724.52.

4. On January 27, 1999, the Court entered an Order confirming the Second Amended Plan, which was filed by Debtors on January 8, 1999. The Chapter 13 Plan provided that Debtors were to resume regular mortgage payments directly to their first mortgagee, Aames, beginning in November of 1998; with all arrearage accrued prior to that date to be paid at $144.00 or more per month pursuant to the Plan and to be distributed to Aames by the Chapter 13 Trustee.

5. On or before August 11, 1999, Aames requested that Whitt bring a Motion for Relief from the Automatic Stay under §§ 362(d) and 1301(c) ("Motion for Relief"). In its Motion for Relief, which was filed with the Court on August 11, 1999; Aames alleged that Debtors had failed to make the regular monthly mortgage payments directly to Aames, as required in the Confirmed Plan, for the months of March through August of 1999, and further alleged that the total post-petition arrearage due, as of August 11, 1999, equaled $5,265.70. Additionally, Aames requested attorney's fees of $425.00 plus its costs for the filing of the Motion for Relief.

6. On or about August 16, 1999, Debtors' attorney timely filed and served an Objection to Aames' Motion for Relief. The matter was scheduled for a hearing on August 26, 1999; however, on August 25, 1999, the parties reached an agreement and a Settlement Order was entered approving a resolution of the Motion for Relief. Pursuant to the Settlement Order, Debtors agreed to continue to remit to Aames the regular post-petition monthly payments in the amount of $957.40 beginning on September 1, 1999. Debtors also agreed to make additional payments in the amount of $960.95 per month also beginning on September 1, 1999, and continuing until the total arrearage of $5,265.70 plus late charges of $95.74 and attorney's fees and costs in the amount of $500.00 were paid. The agreement contemplated a six month period for Debtors to cure the alleged post-petition mortgage payment delinquency. Such an approach is the standard approach taken by many creditors in this District in addressing significant post-petition delinquencies in direct mortgage payments.

7. After the Settlement Order was entered, Debtors advised their attorney that, prior to Whitt's filing of the Motion for Relief, they had forwarded $1,920.00 to Aames which had apparently not been credited. Debtors' attorney contacted Whitt to advise him of Aames' mistake and to request that the $1,920.00 be credited to Debtors' post-petition mortgage arrearage. Debtors' attorney and his office manager contacted Whitt's office via telephone, fax, and correspondence on a regular basis in an attempt to resolve the discrepancy in Aames' records and to receive a proper accounting for Debtors' payments.

8. During the time that Debtors' attorney was attempting to resolve Aames' failure to properly account for Debtors' payments toward their mortgage, and more specifically on October 11, 1999, Aames sent a fax addressed to "BK Dept" and entitled "Payment History" to Fleming's office. The fax was in regard to Debtors' account and apparently indicated a continuing delinquency in Debtors' account with Aames including a post-Settlement Order delinquency. After reviewing Debtors' file, which contained documents relating to Aames' prior attempt to commence a foreclosure action, Aames' fax reflecting Debtors' payment history, and a copy of the Settlement Order entered on August 25, 1999; Fleming filed a verified Affidavit of Default on November 9, 1999, stating that

the terms of the Settlement Order entered on August 25, 1999 had been violated. As a result, on November 12, 1999, the Court entered an Order lifting the automatic stay due to Debtors' failure to make payments pursuant to the Settlement Order.[5]

9. After receiving the Order of November 12, 1999 lifting the automatic stay, Debtors, represented by their attorney, continued to work with Whitt to resolve the discrepancy in payments.

10. After the Court entered the Order of November 12, 1999 lifting the automatic stay, Fleming transmitted a copy of the Order to Aames in mid-December of 1999. Upon receipt of the Order, an employee of Aames called Fleming's paralegal and inquired as to the reason for obtaining the Order. After Fleming's staff explained the reason for requesting that the automatic stay be lifted in Debtors' case, Aames's employee voiced no objection nor raised any further question regarding the appropriateness of the action. Aames never instructed Fleming that the filing of the Affidavit of Default and the request for relief from the automatic stay was an error. Furthermore, Aames never advised Fleming of Whitt's representation of Aames in the earlier Motion for Relief or of the previous attempts made by Debtors' counsel to reconcile the discrepancies in Aames' payment records and never advised him to cease collection efforts against Debtors on behalf of Aames.

11. On December 15, 1999, Debtors were informed by Whitt that Aames had in fact made a mistake and had failed to properly account for the $1,920.00 that Debtors had paid. The parties agreed that upon proper and timely application of the $1,920 payment, Debtors were not and had not been in arrears with payments under the Settlement Order.

12. On January 7, 2000, Whitt filed a Motion to Reinstate the Automatic Stay. The Motion stated: "Payments were incorrectly posted to the debtors' account and, as a result of this error, Aames requested filing of the Affidavit. Therefore, the stay was lifted in error and should be reinstated." An Order Reinstating the Automatic Stay was entered by the Court on February 15, 2000.

13. On January 25, 2000, Fleming, on Aames' behalf, filed and served upon Debtors a suit to foreclose the Aames mortgage in the Court of Common Pleas for Spartanburg County. The State Court proceeding was subsequently dismissed on a motion filed by Fleming.

14. Whitt and Fleming were apparently unaware that Aames had retained both of them to represent it in related matters concerning Debtors' account. On February 7, 2000, after Debtors were served with the foreclosure Summons and Complaint, Debtors' attorney contacted Fleming's office to advise it of Aames' conflicting positions and to ask Fleming to withdraw the foreclosure on behalf of Aames in light of Whitt's Motion to Reinstate the Stay. Fleming's office advised Debtors' attorney that they were unaware of Whitt's Motion to Reinstate the Stay and that they did not plan to stop the foreclosure. The following day, Debtors' attorney contacted Whitt to inquire as to the status of Aames' conflicting position. Whitt appeared to be unaware that Fleming had filed a foreclosure action in State Court. The confusion was eventually resolved, and Fleming ultimately filed a motion to dismiss the foreclosure action.

15. Due to Aames' actions in regard to Debtors' account and its efforts to collect through the bankruptcy case and the foreclosure action, Debtors suffered loss of wages; time; additional expenses, including child care expenses; great emotional distress including loss of sleep, embarrassment, and problems with their marital re-

---

5. The Court has no means of knowing whether Aames had changed attorneys or retained new counsel for this matter, but relies on the appearance of counsel.

lationship;[6] and also incurred additional legal fees and costs.

16. At the hearing on the Motion, Debtors' attorney introduced a "Movement/Time Sheet" which documented the additional attorney's fees and costs expended to resolve the problems created by Aames. The Fee Accounting, which totals $2,270.00, includes services performed by Debtors' attorney and paralegal starting on August 27, 1999, following the entry of the Settlement Order, and continuing up until the hearing on the Motion on March 9, 2000. Counsel for Aames expressed no objection to the total fees and expenses represented by the accounting. Debtors also incurred further fees and costs associated with their attorney's research and preparation of a proposed order as directed by the Court at the hearing on the Motion, as well as costs and fees associated with their attorney's preparation of a supplemental brief and representation at the hearing on the Order to Show Cause.

17. The Motion failed to specify under what sections of the Bankruptcy Code or Federal Rules of Bankruptcy Procedure Debtors were seeking damages; therefore, pursuant to Fed.R.Bankr.P. 9011(c)(1)(B),[7] on May 15, 2000 the Court entered an Order to Show Cause requiring parties to further address applicable authorities.

18. On May 26, 2000, Debtors filed a supplemental brief in which they specified that they were seeking damages pursuant to § 362(h) and Fed.R.Bankr.P. 9011.

## CONCLUSIONS OF LAW

Debtors filed a. Motion against Aames requesting that the Court sanction the mortgage company and award Debtors attorney's fees, damages, and punitive damages. In their supplemental brief, filed in response to the Court's Order to Show Cause, Debtors assert that damages should be awarded against Aames pursuant to § 362(h) and Fed.R.Bankr.P. 9011.

Fed.R.Bankr.P. 9011[8] grants courts the authority to sanction an attorney, a client, or both. *United States v. International Brotherhood of Teamsters,* 948 F.2d 1338, 1343 (2d Cir.1991) (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1274 (2d Cir.1986)) ("Rule 11 subjects the client—'the represented party'—to sanctions even if he has not signed the offending paper."). A motion or pleading violates Rule 11 when

it "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."

*International Brotherhood of Teamsters,* 948 F.2d at 1344 (quoting *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 254 (2d Cir.1985)).[9] Even though the lan-

---

**6.** Due to Aames' actions, including its failure to properly credit Debtors' account, as well as the confusion that Aames created in obtaining representation by separate counsel; Debtors' marital relationship underwent serious problems, and Mrs. Kilgore doubted her husband's assurance that he had remitted the $1,920.00 payment to Aames. Furthermore, among other things, Debtors and their children suffered under the prospect of losing their home.

**7.** Fed.R.Bankr.P. 9011(c)(1)(B) provides that "[o]n its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto."

**8.** In determining whether a violation under Fed.R.Bankr.P. 9011 has occurred, "courts may look to cases that interpret Federal Rule of Civil Procedure 11." *McGahren v. First Citizens Bank & Trust Co. (In re Weiss),* 111 F.3d 1159, 1170 (4th Cir.1997); *see also In re Alberto,* 119 B.R. 985, 992 (Bankr.N.D.Ill. 1990).

**9.** More specifically, Fed.R.Bankr.P. 9011 provides:

(b) **Representations to the Court.** By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's

guage of the Rule seems to imply that it is the party who signs, files, or advocates the pleading or motion, in most cases the attorney, who violates the Rule, " 'it may be appropriate under the circumstances of the case to impose a sanction on the client.' " *Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 892 F.2d 802, 809 (9th Cir.1989), *aff'd*, 498 U.S. 533, 111 S.Ct. 922, 112 L.Ed.2d 1140 (1991); *see also Lightning Lube, Inc. v. Witco Corp.*, 144 F.R.D. 662, 667 (D.N.J.1992) (quoting Notes of Advisory Committee on Rules, 1983 Amendment, Fed.R.Civ.P. 11) ("Even though it is the attorney whose signature violates the Rule, it may be appropriate under the circumstances of the case to impose a sanction on the client."). In many instances, in fact, it is the client, not the attorney, who is in a better position to investigate the facts of the case and assure that the information ultimately provided to the court is correct. *See, e.g., Business Guides, Inc.*, 498 U.S. at 549, 111 S.Ct. 922.

The Supreme Court has left unanswered the issue of "whether or under what circumstances a non-signing party may be sanctioned" pursuant to Fed.R.Civ.P. 11 or Fed.R.Bankr.P. 9011. *Id.* at 934–35. However, the general view among the various jurisdictions is that these rules do not impose liability solely on the basis of a signature, but they also allow liability to fall on parties who are represented by counsel and who do not sign any offending document. *See, e.g., Topalian v. Ehrman,*

3 F.3d 931, 934 (5th Cir.1993) ("Rule 11 clearly allows district courts the discretion in appropriate cases to impose sanctions against non-signing represented parties for violations of the rule by their attorneys."); *Independent Fire Ins. Co. v. Lea*, 979 F.2d 377, 379 (5th Cir.1992) ("[W]e are constrained to hold under the facts of this case that the 'represented party' against which sanctions are levied must be a party who had some direct personal involvement in the management of the litigation and/or the decisions that resulted in the actions which the court finds improper under Rule 11."); *Continental Ins. Co. v. Construction Indus. Servs. Corp.*, 149 F.R.D. 451, 454 (E.D.N.Y.1993); *Donohoe v. Consolidated Operating & Prod. Corp.*, 139 F.R.D. 626, 631 (N.D.Ill.1991) ("What the Business Guides opinion was not called upon to discuss (because the question was not presented in that case) was whether the client might also be liable for the absence of a pre-filing 'reasonable inquiry' where any Rule–11–violative document was signed and filed not by the client but by the lawyer. Because that is how Rule 11 reads literally, and because all of the Supreme Court's teachings to date have uniformly been based upon literal readings of the Rule, this Court will treat that question as getting a 'Yes' answer."); *Kenna v. United States Dept. of Justice*, 128 F.R.D. 172, 176 (D.N.H.1989) ("Even a party who is represented by counsel and who does not sign the offending document may be penalized."); *In re Robinson*, 198 B.R.

knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have eviden-

tiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) **Sanctions.** If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firm, *or parties that have violated subdivisions (b) or are responsible for the violation.*

(Emphasis added).

1017, 1023 (Bankr.N.D.Ga.1996) (footnote omitted) ("Sanctions may be imposed against the individual who signed the pleading or against the client represented by the signer."). *But see Lightning Lube, Inc. v. Witco Corp.*, 144 F.R.D. 662, 667 (D.N.J.1992) (citing *Lony v. E.I. DuPont de Nemours & Co.*, 935 F.2d 604, 617 n. 4 (3d Cir.1991)) ("The Third Circuit, albeit in dicta, seems to have interpreted Business Guides to mean that a client who has not signed the offending document cannot be sanctioned under Rule 11.").

■ Even though the Fourth Circuit has not directly addressed the issue of whether a non-signatory party can be sanctioned under Fed.Rule Civ.P. 11 or Fed.R.Bankr.P. 9011; this Court, convinced by other authorities which have addressed it, is prepared to hold that a represented party who does not sign a pleading, motion, or other paper can nevertheless be held liable under the requirements of Rule 11. Even though the subparts of Fed.R.Bankr.P. 9011 do not expressly state under what circumstances a non-signing party may be held liable, given that subsections (b)(1)–(3) only address the actions of an attorney or unrepresented party, subsection (c) specifies that if the court determines that subsection (b) of the rule has been violated, "the court may … impose an appropriate sanction upon the attorneys, law firms, *or parties that have violated subdivision (b) or are responsible for the violation.*" (Emphasis added). Thus, the Rule clearly contemplates the imposition of sanctions even on a non-signatory represented party who is responsible for the violation. *See Continental Ins. Co.*, 149 F.R.D. at 454 ("[Subsection c] plainly contemplates the imposition of sanctions on a represented party who does not sign a pleading, motion, or other paper. Otherwise, the reference in that sentence to [responsible parties] is superfluous, and the sentence would only refer to 'the person who signed' a pleading, motion, or other paper.").

■ Because the Rule allows courts to sanction not only the attorney involved in the case but also anyone who is responsible for the violation, the issue is not whether a party against whom sanctions are sought has signed the subject document; rather, "a court will determine a party's responsibility for a violation by analyzing the facts leading up to the violation, rather than by reference to whose signature appears on the paper." Jerold S. Solovy et al., *Sanctions Under Rule 11,* 601 P.L.I.Litig. 105, 212 (1999). Courts generally allocate sanctions between the client and his or her attorney based on their respective culpability, and where the client misleads the attorney by providing incorrect information, the client should bear the sanctions. *See, e.g., Chevron, U.S.A., Inc. v. Hand,* 763 F.2d 1184, 1186 (10th Cir.1985) ("Rule 11 directs that the sanction should fall upon the individual responsible for the filing of the offending document. In a given case this could be the attorney, the client, or both. In this case the evidence was sufficient to support the district court's implicit assumption that [the client] was the catalyst behind this frivolous motion. The sanction therefore properly falls on her."); *White v. Creditors Serv. Corp. (In re Creditors Serv. Corp.),* 207 B.R. 567, 570 (Bkrtcy.S.D.Ohio 1997) ("Sanctions can be levied on the attorney as the signer of the pleading, the client as the catalyst behind the pleading, or both, based on the allocation of appropriate culpability."); *Cirino v. Federal Express Corp.,* 1995 WL 489435 (S.D.N.Y.1995); *Sussman v. Salem, Saxon & Nielsen, P.A.,* 150 F.R.D. 209, 213 (M.D.Fla.1993); *Home Savings Assoc. v. Woodstock Assoc. I, Inc. (In re Woodstock Assoc. I, Inc.),* 121 B.R. 238, 243 (Bkrtcy.N.D.Ill.1990) ("Generally, sanctions fall wholly on the client when he has misled his attorney as to the facts or purpose of the proceeding.… When an attorney and client share responsibility for litigation strategy and such strategy violates Rule 11, courts can impose joint and several liability.").

In this case, while Fleming states that his office staff had violated certain office policies to require written instructions before reinstating foreclosure, he did not accept sole responsibility for any damage incurred by Debtors as a result of these collection efforts on Aames' behalf. In as much as neither Debtors nor Aames have directed the request for sanctions against Fleming, despite his apparent willingness to assume some of the responsibility; the Court does not feel compelled to search *sua sponte* into the attorney-client relationship, communications, and established procedures existing between Aames and Fleming in order to sort out and identify whether the attorney should also be sanctioned. Therefore, the sanctionable conduct which is the focus of the Motion before the Court is not the creditor attorney's conduct, who relied on the information provided by Aames in filing the Affidavit of Default and the foreclosure action; rather, it is Aames' conduct.[10]

█ The Court finds that even though Aames did not sign any pleading or document which were presented to the Court, its actions in providing counsel with incorrect information, in triggering and not correcting the relief from the automatic stay, which ultimately led to the foreclosure action, warrant sanctions. The issue thus becomes what standard of conduct the Court should apply in determining whether Aames should ultimately be held liable. Courts have generally held that, when imposing sanctions pursuant to Fed.R.Civ.P. 11 or Fed.R.Bankr.P. 9011, the court must hold parties to "an objective standard of

conduct, asking whether such conduct is 'reasonable under the circumstances.'" *Allnutt v. Friedman (In re Allnutt)*, 1995 WL 222067 (D.Md.1995) (quoting *In re Burse*, 120 B.R. 833, 836 (Bankr.E.D.Va. 1990)); *see also McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir.1997); *Mason & Dixon Lines, Inc. v. First Nat'l Bank*, 86 B.R. 476, 481 (M.D.N.C.1988). However, the Supreme Court has left that issue unaddressed in the case of non-signatory parties. *See Business Guides, Inc. v. Chromatic Communications Enter., Inc.*, 498 U.S. 533, 554, 111 S.Ct. 922, 112 L.Ed.2d 1140; *see also United States v. International Brotherhood of Teamsters*, 948 F.2d 1338, 1344 n. 3 (2d Cir.1991) ("Before the Supreme Court's decision in Business Guides, Inc., the rule in this circuit was that a represented party was subject to Rule 11 sanctions only upon a showing of subjective bad faith.... Business Guides, Inc. changed that rule as to parties who sign pleadings, motions, or other papers. Whether a subjective or objective standard applies to parties who do not sign such papers was left open by the Supreme Court in Business Guides, Inc...."). Some courts have attempted to approach the issue both prior to and after the Supreme Court's decision in *Business Guides*, but the cases do not express a clear holding as to the whether non-signatory parties are held to a bad faith or an objective reasonableness standard. *See, e.g., Continental Ins. Co v. Construction Ind. Servs. Corp.*, 149 F.R.D. 451, 455 (E.D.N.Y.1993) ("Consistent with the text of rule 11 and its legislative history, this court holds that where the in-house coun-

---

**10.** The Court notes that were it to consider Fleming as the subject of the sanctions request, at either Debtors' claim or Aames' cross-claim, Fleming may be similarly subject to sanctions as Aames, jointly and severally. *See, e.g., In re Robinson*, 198 B.R. 1017, 1023 (Bankr.N.D.Ga.1996). Fleming's liability would depend on the consideration of the following factors which aid courts in determining whether the attorney has made a reasonable inquiry to satisfy the requirements of the Rule: (1) the time available to the signer

for investigation; (2) the extent of the attorney's reliance upon his client for the factual support for the document; (3) the feasibility of pre-filing investigation; (4) whether the signing attorney accepted the case from another member of the bar or forwarding attorney; (5) the complexity of the factual and legal issues; and (6) the extent to which development of the factual circumstances underlying the claim requires discovery. *State Farm Mut. Auto. Ins. Co. v. Waltzer (In re Childs)*, 29 F.3d 1018, 1026 (5th Cir.1994).

sel of a represented party participates in the litigation and the attorney of record reasonably relies on the findings of fact and conclusions of law made by the in-house counsel, Rule 11 imposes an affirmative duty upon the represented party, as principal for the in-house counsel, to conduct a 'reasonable inquiry' into the facts and the law. The applicable standard is one of reasonableness under the circumstances."); *Donohoe v. Consolidated Operating & Prod. Corp.*, 139 F.R.D. 626, 631 (N.D.Ill.1991); *Greenhouse v. United States*, 780 F.Supp. 136, 147 (S.D.N.Y. 1991). In *Greenhouse v. United States*, the court noted that "[the Supreme Court in] *Business Guides* provided guidance in determining whether non-signing parties have conducted themselves in such a way as to warrant the imposition of sanctions." *Id.* at 147. In *Greenhouse*, the court sanctioned plaintiff's attorney due to the attorney's "failure to conduct a reasonable inquiry into the relevant law, his failure to advance a reasonable legal argument, and his resubmission of a claim that [the] [c]ourt had previously dismissed for lack of subject matter jurisdiction." *Id.* The court ultimately imposed sanctions on the attorney but denied the defendant's motion for sanctions as it related to the clients. In reaching such conclusion, the court noted that the clients were not sophisticated corporate plaintiffs and most likely did not have a clear understanding of the basis for the court's prior dismissals of their case. The court further stated that "[i]n the instant case, plaintiff's attorney is not being sanctioned on the basis of unsupportable facts in a pleading. If that were the case, then the [clients] would more likely be responsible for conveying such information to their attorney." *Id.* The Court circumvented the issue of what standard a represented party who does not sign a motion or pleading should be held to; however, it drew a clear distinction between a case in which the sanctionable conduct involves unsupportable facts in a pleading, as is the case presently before this Court, and a case in which the legal arguments are not supported by existing law.[11]

In this case, the Court concludes that Aames' conduct warrants sanctioning under Fed.R.Bankr.P. 9011. First, despite the fact that it had received notice of the improper accounting and had previously retained Whitt to act for it in the bankruptcy case, Aames misstated critical facts when it directed an incorrect payment history to Fleming, who had previously been retained by it in a related foreclosure action on Debtors' property and was experienced bankruptcy counsel. After reviewing Debtors' information already on file as well as the indication of Debtors' delinquency that had been faxed to him by Aames, and from which it is inferable that Aames wished Fleming to act further on its behalf; Fleming verified and filed an Affidavit of Default which incorrectly stated that Debtors had failed to comply with the Settlement Order and improperly presented to the Court an Order Granting Relief from the Automatic Stay on November 12, 1999. Aames acted improperly by submitting erroneous information to Fleming, which was ultimately relied on in the filing of Fleming's Affidavit of Default and which ultimately caused the relief of the stay. Aames' actions, which are the basis of the sanctions under Fed.R.Bankr.P. 9011, took place after Whitt, who had been contacted by Debtors' counsel, had advised it of its failure to properly account for Debtors' payments toward their mortgage. Even after Fleming advised Aames in writing of his action to obtain relief from the stay and had a conversation with one of Aames' employees following the entry of the Order, Aames never advised Fleming that the Affidavit of Default which led to the Order Granting Relief from the Automatic Stay was based on incorrect infor-

---

11. In the latter case, the sanctions usually fall on the attorney as opposed to the client. *See* Fed.R.Bank.P. 9011(c)(2)(A) ("Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2)").

mation. Furthermore, at no time during or subsequent to that conversation did Aames instruct Fleming not to continue acting on its behalf to collect from Debtors or to continue with the foreclosure action, as is the typical practice for mortgage creditor attorneys in cases following an order relieving the stay. Aames was the responsible party in causing the automatic stay to be lifted. Aames, in fact, was the retainer of all the information regarding Debtors' mortgage account, was the recipient of Debtors' payments, and pursuant to its prior dealings with Fleming, was in the position to accurately direct his actions. The cumulative effect of Aames' misconduct in not crediting Debtors' account, providing Fleming with incorrect information which ultimately caused the filing of the relief from stay, its failure to advise Fleming of the incorrectness of his action on its behalf, and its failure to advise him to cease action and not to file a foreclosure suit following the entry of the Order relieving the automatic stay; all indicate that Aames conducted itself improperly.

■■■ The Court also "possesses the inherent power to regulate litigants' behavior and to sanction a litigant for bad-faith conduct" pursuant to § 105. *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F.3d 1159, 1171 (4th Cir. 1997) ("A court may invoke its inherent power in conjunction with, or instead of, other sanctioning provisions such as Rule 9011."). Section 105 more specifically provides:

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce

or implement court orders or rules, or to prevent an abuse of process.

Section 105 grants bankruptcy courts broad powers "to implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." *In re Volpert*, 110 F.3d 494, 500 (7th Cir.1997); *see also In re Weiss*, 111 F.3d at 1159; *Burd v. Walters (In re Walters)*, 868 F.2d 665 (4th Cir. 1989); *GE Capital Mortgage v. Asbill*, C/A No. 3:99–0773–19 (D.S.C.2/23/2000) ("It is clear from the very terms of this statute that Congress gave the Bankruptcy Court broad inherent discretionary powers to ensure that the motions made and issues raised before it are managed efficiently and justly"). The broad language of § 105, granting bankruptcy courts the power to prevent abuse of the judicial process must encompass the court's authority to sanction a creditor for its misconduct in providing its attorney with incorrect information on which to base a motion requesting relief from the automatic stay and, ultimately, a foreclosure action.[12]

■■■ Part of Aames' misconduct was its lack of diligence and disregard in providing its attorneys with accurate information. As this Court has previously noted in the case of *In re Asbill:*

The court must expect that parties, especially sophisticated creditors, base such motions on a proper factual basis and at least accurately represent the state of their own records. More and more frequently, in these days of national lenders and frequent assignments of notes and mortgages, this Court is confronted with creditors who file relief from stay motions asserting that debtors are in arrears when in fact, after a reasonable inquiry, it appears that they are current in their payments. Such a lack of diligence by the creditors is not only a problem for the Court and the debtors, who can not only least afford the addi-

---

**12.** The parties have addressed § 105 and in particular the *Asbill* case precedent in either

their written memorandum or oral argument.

tional costs in attorney's fees but whose reorganization in some cases is dependent upon the retention of the collateral which is the subject of such motions, but is also even a problem for the creditors' attorneys that file these motions. To effectively be able to prosecute these motions and represent the truth of the matter alleged, these attorneys must be able to rely upon their clients and the information provided to them.

*In re Asbill,* C/A No. 98–05819–W (Bankr. D.S.C.02/01/1999); *aff'd* C/A No. 3:99–0773–19 (D.S.C.02/23/2000). This Court notes that creditors, especially sophisticated creditors who, like Aames, deal on a regular basis with debtors who are in bankruptcy and in arrears on their accounts, and who often appear before the bankruptcy court to request relief from the automatic stay, are expected to make true and accurate representations to the Court and their counsel. Creditors, who are in control of accounts information, are expected to communicate with their attorneys and provide them with accurate information on which the lawyers can rely in advocating the creditor's position, and they are also required to promptly account for debtors' payments or at least timely respond to debtors' questions regarding their account. Furthermore, retaining multiple attorneys for the same case, as in this case, can lead to improper actions and inconsistent conduct which can not only cause confusion, but also increase the costs and trouble of proceedings for all parties involved as well as for the Court. For these reasons and all those stated above, the Court concludes that Aames has failed to act reasonably and properly in this case; therefore, sanctions against Aames are warranted under both Fed.R.Bankr.P. 9011[13] and § 105. *See, e.g., In re Asbill,* C/A No. 98–05819–W (Bankr. D.S.C.02/01/1999); *aff'd* C/A No. 3:99–0773–19 (D.S.C.02/23/2000); *In re Marett,* C/A No. 96–75003–W (Bankr. D.S.C.11/04/1996).

In their supplemental brief, Debtors also assert that the Motion for Relief filed by Whitt on behalf of Aames on August 11, 1999, stating that Debtors had failed to make monthly payments outside the plan for March through August of 1999, as well as the Affidavit of Default filed on November 9, 1999, stating that Debtors had defaulted on the August 25, 1999 Settlement Order, were both not grounded in fact; therefore, the wrongful filing of the Motion for Relief and lifting of the automatic stay in itself violated the automatic stay subjecting Aames to damages under § 362(h). As to the issue of whether the filing of the Motion for Relief on August 11, 1999 constituted a violation of the stay pursuant to § 362(h), the Court finds that the filing of the Motion for Relief is not grounds for sanctions under Fed.R.Bankr.P. 9011. In

---

13. As it presently reads, Fed.R.Bankr.P. 9011(c)(1)(A) provides in pertinent part:

A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision (b). It shall be served as provided in Rule 7004. The motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b).

This subsection clearly provides parties against whom sanctions are sought with a "safe harbor" consisting of a mandatory procedural prerequisite which allows litigants to escape sanctions if they withdraw the offending document within 21 days after they are served with the appropriate motion. Courts generally deny the award of sanctions in cases where the safe harbor requirements of Fed. R.Bankr.P. 9011(c)(1)(A) have not been met. *See, e.g., Barber v. Miller,* 146 F.3d 707, 710–11 (9th Cir.1998). In this case, the respondent has not raised this as an issue or as an objection to sanctions and has waived it. Furthermore, the Court notes that in this case, even if Debtors' had served Aames or Fleming with the appropriate motion prior to filing it with the Court, it would have been too late to repair the damage that had already been done.

general, Debtors were in arrears in their mortgage payments and the Motion itself may have been reasonable under the circumstances. This view is supported by the fact that Debtors' counsel was mistaken as to the exact amount of the arrearage and agreed to the settlement outlined in the Order entered on August 25, 1999. As to the assertion that the filing of the Motion or Affidavit of Default which led to the issuance in error of the Order Granting Relief from Stay constitutes a violation of the stay pursuant to § 362(h); when considering the Court's ruling as detailed above in connection with Fed.R.Bankr.P. 9011 and § 105, it is not necessary to address assertions under § 362 at this time.[14]

█ Once a court determines that Fed.R.Bankr.P. 9011 and § 105 have been violated, the next question becomes what amount is appropriate to award against Aames. Fed.R.Bankr.P. 9011(c)(2) provides:

> A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated .... the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

*See, e.g., In re Marett,* C/A No. 96–75003–W (Bankr.D.S.C.11/04/1996); *In re Peters,* C/A No. 93–71133–B (Bankr. D.S.C.05/24/1993).

█ The primary purpose of Fed.R.Bankr.P. 9011 is to deter future abuse of the judicial process. As the Fourth Circuit has stated:

A district court can and should bear in mind that other purposes of the rule include *compensating the victims of the rule 11 violation,* as well as punishing present litigation abuse, streamlining court dockets and facilitating court management. But the amount of a monetary sanction should always reflect the primary purpose of deterrence.

*Miltier v. Downes,* 935 F.2d 660, 665 (4th Cir.1991) (emphasis added) (quoting *In re Kunstler,* 914 F.2d 505, 522–23 (4th Cir. 1990)); *see also Brandt v. Schal Assoc., Inc.,* 960 F.2d 640, 646 (7th Cir.1992) ("[D]eterrence may well include the payment of expenses and attorneys' fees generated as a result of the filing of abusive litigation. Case law acknowledges compensation as another important objective and purpose for Rule 11."). While the appropriate sanction is usually to reimburse the movant for either the full or a partial amount of the costs, expenses, and attorney fees incurred as a result of the petitions filed in violation of the Rule; "the rule permits a court to impose sanctions greater than the moving party's attorney's fees if the court in its discretion determines that such sanctions are required to deter further unreasonable conduct." *Fox v. Acadia State Bank,* 937 F.2d 1566, 1571 (11th Cir.1991). In determining the proper amount of sanctions, a court should consider "the reasonableness of the opposing party's attorney's fees, the minimum to deter, the ability to pay, and factors related to the severity of the rule 11 violation." *In re Miltier,* 935 F.2d at 665.

█ At the hearing on the Motion, Debtors' attorney submitted a Fee Accounting, which itemized the time spent by him and his paralegal for services performed between August 27, 1999 and March 9, 2000 but does not take into account the fees and costs expended in researching and preparing a proposed order as directed by the Court at the hearing on

---

**14.** Neither the parties nor the Court have located a factually similar opinion which considers the application of § 362(h). However, were this Court to look further, it appears

unreasonable for Ames to defend such an action by arguing that no stay was in existence due to an Order which was obtained by a misrepresentation to the Court.

the Motion, nor does it account for the legal fees expended in preparing a supplemental brief as requested in the Order to Show Cause as well as the fees in conjunction with the attorney's representation at the hearing on the Order to Show Cause. Aames and Fleming have argued that some fees are not sufficiently related to the filing of the Affidavit of Default as to be properly considered by the Court in awarding the appropriate sanctions. As a result, the Court finds that the reasonable amount of attorney's fees and costs incurred by Debtors due to Aames' actions is $2,000.00.[15] Furthermore, the Court notes that Aames' improper conduct resulted in significant consequences on Debtors, distorted the procedures relied upon by the Court, and caused a waste of judicial time and resources. As a sophisticated corporation that deals with mortgage accounts, even those of bankruptcy debtors, on a regular basis; Ames should reasonably and properly credit debtors' accounts for payments that are remitted and/or promptly respond to allegations of discrepancy and *report accurate information in its pleadings filed with this Court.* Aames' actions fell short of its duties and, when taking into consideration the company's regular appearance in this Court, its ability to pay, and the minimum amount necessary to deter such further conduct; the Court finds that the proper amount of sanctions is in the amount of $3,000.00.

It is therefore,

**ORDERED** that Aames Financial Corporation should pay to Debtors the amount of $3,000.00.

**AND IT IS SO ORDERED.**

---

15. The Court notes that Debtors' attorney spent several additional hours between the hearing on the Motion on March 9, 2000 and the hearing on the Order to Show Cause on June 1, 2000 in preparing a Proposed Order as requested by the Court at the hearing on the Motion and a supplemental brief in response to the Order to Show Cause, and in representing Debtors at the hearing on the Order to Show Cause.